Bennie Lee GLENN, Appellee,

v.

Walter T. JOHNSON; Jane G. Greenlee; Joy J. Johnson; Wymene Valand; Joseph Palmer, Appellants.

No. 84–6448.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 8, 1985.

Decided May 13, 1985.

James Peeler Smith, Asst. Atty. Gen., Raleigh, N.C. (Rufus L. Edmisten, Atty. Gen., Raleigh, N.C., on brief), for appellants.

Charles T.L. Anderson, Apex, N.C. (North Carolina Prisoner Legal Services, Inc. on brief), for appellee.

Before WINTER, Chief Judge, MURNAGHAN, Circuit Judge, and MERHIGE, United States District Judge for the Eastern District of Virginia, sitting by designation.

MURNAGHAN, Circuit Judge:

A wrong turn near the outset of a journey usually extends the trip unnecessarily. That is what has happened here. Bennie Lee Glenn was convicted in 1972 of several crimes and sentenced consecutively to 115 years for assault (five years), armed robbery (thirty years) and kidnapping (eighty years). The applicable statute governing parole eligibility, now repealed, was N.C.Gen.Stat. § 148–58, which provided:

All prisoners shall be eligible to have their cases considered for parole when they have served a fourth of their sentence, if their sentence is determinate, and a fourth of their minimum sentence, if their sentence is indeterminate; provided, that any prisoner serving sentence for life shall be eligible for such consideration when he has served 10 years of his sentence. Nothing in this section shall be construed as making mandatory the release of any prisoner on parole, but shall be construed as only guaranteeing to every prisoner a review and consideration of his case upon its merits.

A sentence of 115 years is determinate. Glenn's parole eligibility date should, therefore, have been 28¾ years from the date of his sentence.

The North Carolina Parole Commission, in the face of clear and unambiguous language, tried to approach the statute "logically." The logic, however, was fatally flawed. The commission reasoned that a life sentence would be at least as serious and, in virtually every case, more serious than any sentence for a term of years. Operating from that premise, the Commission decided that life had to receive the longest period before parole eligibility could arise and, consequently, it would be improper, and unintended by the legislature, for parole eligibility to be deferred after the prisoner has served ten years of his sentence, regardless of the aggregate number of years comprising the sentence. Accordingly, the Parole Commission adopted a rule which deemed prisoners parole eligible after serving ten years, even though the aggregate sentence was more than forty years (in this case 115 years).

The Parole Commission's motivation was doubtless very humane. It also, unfortunately, led to an altogether indefensible reading of the statute. In the first place, in simple English, a forty year or a 115 year sentence is "determinate." A life sentence, on the other hand, is among the categories described as "indeterminate." On the unambiguous language of the statute, the ten year maximum for parole eligibility in indeterminate sentences simply has no application to determinate sentences.

Moreover, when one stops to think about it, it was not entirely illogical, if illogical at all, for the North Carolina legislature to have drafted what the Parole Commission took it upon itself to deem an arbitrary provision. Murder is the most immediate crime to which one's mind turns when life

imprisonment is contemplated. It is an execrable crime. At the same time, some studies indicate that the single perpetration of the crime of murder is by no means indicative of a predisposition to commit other crimes. *See, e.g.,* J. Monahan, *Predicting Violent Behavior: An Assessment of Clinical Techniques* 135–36 (1981). On the other hand, those who repeatedly commit crimes punishable only by determinate sentences may display a propensity towards recidivism which would make early parole for them less reasonable than parole for someone sentenced to life.

Glenn was convicted of three crimes, assault, armed robbery and kidnapping, all of which may have grown out of essentially a single occurrence. Another prisoner, however, might have been convicted of three serious crimes quite independent of one another, yet carrying the same penalties. In that case, there would exist an indication of a predilection not so readily amenable to elimination in time as to make parole eligibility at ten years desirable. At any rate, the North Carolina legislature was free to take such considerations into account and to reach its conclusion that for a sentence of 115 years, parole eligibility should not arise until 28¾ years had elapsed.

We have not been apprised of exactly when the North Carolina Parole Commission's regulation was adopted. However, at oral argument the defendants represented that at least 200 prisoners with prison terms of more than forty years had been released under the ten year parole eligibility policy.

On December 30, 1974, over two years from the time Glenn received his sentence of 115 years, the Attorney General of the State of North Carolina, acting through an Assistant Attorney General, answered an inquiry from the Parole Commission as to the validity of the regulation. The Attorney General advised that the policy of reducing to ten years the parole eligibility date for prisoners sentenced to more than forty years was *"ultra vires."* [1] The import of the December 30, 1974 opinion was reaffirmed in a published opinion dated August 8, 1975 of the Attorney General and the same Assistant Attorney General (who in the interim had become a Special Deputy Attorney General).

A great deal of litigation ensued when Glenn sought an adjudication that his parole eligibility date (*i.e.,* the date on which he first would be considered for parole, *not* the date on which parole would be obligatory) would arise in 1982, ten years after he was sentenced. A class was certified and much attention was paid by the magistrate, before whom the case was tried by consent of the parties to considerations of alleged due process and *ex post facto* infractions.[2] Those questions, while fascinating, need not long engage us, because they proceed on the basic assumption that, when the Parole Commission revised its regulation to conform with the opinions of the Attorney General, it effected a change in the law. However, what happened was something quite different. There simply was a *correction* in an erroneous interpretation of the law by the Parole Commission, not a

---

**1.** In so concluding, the Attorney General pointed out that, under N.C.Gen.Stat. § 148–57, the Parole Commission had authority to establish rules only for those "prisoners eligible for parole consideration," and that "eligible for consideration" had been defined by the legislature in N.C.Gen.Stat. § 148–58. The opinion stated in pertinent part:

> It is therefore the opinion of the undersigned that a policy of making life inmates eligible for parole after ten years and disregarding the additional sentences to run at the expiration of the life sentence or of life sentences to run at the expiration of other sentences, is ultra vires and without any authorization in law. The Parole Commission can only act when the

inmate comes within the parameter of its jurisdiction. The Parole Commission cannot, by policy, extend the limits of its jurisdiction. (Emphasis in original).

**2.** An issue glossed over by the magistrate, but vigorously asserted on appeal by the state, is the question of whether 42 U.S.C. § 1983 was the proper procedural vehicle for the present action or whether, instead, *habeas corpus* was the exclusive route open to the litigants. *Cf. Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). In light of our view of the merits, there is no need for us to resolve that thorny question.

change in the law. All along, the applicable statutory provision unambiguously required that a person serving a determinate sentence should become eligible for parole only after having served a fourth thereof.

Since the interpretation of the statute was not only foreseeable but indeed was inescapable, the plaintiffs simply have no case. *Weaver v. Graham,* 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981) (*ex post facto* claim predicated on a legislative change in existing law); *Bouie v. City of Columbia,* 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964) (due process claim predicated on an unexpected judicial construction of a state penal statute). At oral argument, counsel for the plaintiffs acknowledged that a valid interpretation of the statute was essential to their success in the case. *See Lerner v. Gill,* 751 F.2d 450, 457–59 (1st Cir.1985).

The case was tried on stipulated facts. Some of the relief requested by the plaintiffs was granted. In light of what we have set forth, the plaintiffs were entitled to no relief. Accordingly, the judgment below is reversed and the case remanded with directions to enter a judgment in accordance with this opinion.

REVERSED.