**Ira D. LUSTGARDEN, Plaintiff,**

v.

**Frank GUNTER, Defendant.**

**No. 91–C–951.**

United States District Court,
D. Colorado.

Oct. 28, 1991.

Ira D. Lustgarden, pro se.

Frank Gunter, Executive Director, Colorado Dept. of Corrections, Colorado Springs, Colo., Gale Norton, Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

CARRIGAN, District Judge.

*Pro se* petitioner Ira D. Lustgarden commenced this action by filing a petition for writ of habeas corpus under 28 U.S.C. § 2254. Pursuant to D.CO.LR 605, the case was referred to Magistrate Judge Richard M. Borchers who has reviewed the matter and prepared a recommendation. Copies of the recommendation and Local Rule 605 were mailed to the petitioner on August 23, 1991. On September 9, 1991, the petitioner filed an objection to the Magistrate Judge's recommendation.

In 1983, the petitioner pleaded guilty to three counts of sexual assault on a child. He was sentenced to a term of sixteen years in prison. Accumulated "earned time" credit has accelerated his discharge date from May 1999 to January 1998. Petitioner also has accumulated sufficient "good time" credits which, if they were

now applied, would render him immediately eligible for release. Pursuant to Colo.Rev. Stat. § 17–2–201(5) and Colorado Supreme Court decisions interpreting that statute, however, the state parole board has declined to apply the petitioner's good time credits to his sentence.

Petitioner asserts that he is entitled to mandatory parole and that his continued incarceration violates his constitutional rights. He argues: (1) that the Colorado Supreme Court's interpretation of a Colorado law is not binding on this court; (2) that denial of mandatory parole constitutes enforcement of an *ex post facto* law as applied to him; (3) that he has been denied due process; and that the state is estopped from denying him parole; (4) that his equal protection rights have been violated; and (5) that denial of parole constitutes cruel and unusual punishment. Petitioner has exhausted his state remedies.

■■■ The Magistrate Judge has recommended denying relief on each ground asserted and dismissing the petition. As to the first, fourth and fifth grounds, above, the petitioner's objection raises no issue not adequately addressed in the Magistrate Judge's recommendation.[1] Because the recommendation as to the first, fourth and fifth grounds for relief appears to be supported by law and the facts, it is adopted as this court's order. I hereafter address together issues arising with respect to the second and third asserted grounds for relief.

Petitioner's second ground for a writ of habeas corpus is based on the assertion that denial of his parole constitutes enforcement of an *ex post facto* law in violation of the United States and Colorado Constitutions. As a third ground, he asserts a due process violation.[2]

Section 17–2–201(5)(a), Colo.Rev.Stat., provides, in pertinent part, that:

"As to any person sentenced for ... conviction of a sex offense, as defined in section 16–13–202(5), C.R.S. ... the [parole] board has the sole power to grant or refuse to grant parole...."

In *Thiret v. Kautzky*, 792 P.2d 801 (Colo. 1990), the Colorado Supreme Court determined that Colo.Rev.Stat. § 17–2–201(5) excludes from mandatory parole persons sentenced for sex offenses. That court further determined that the parole board has discretion to deny parole to sex offenders who were not sentenced under the Sex Offenders Act, Colo.Rev.Stat. §§ 16–13–201 *et seq. Id.* at 805–807.

Prior to *Thiret*, the parole board had applied good time credits to sex offenders' sentences. *Id.* at 806. Petitioner asserts that applying to him the *Thiret* opinion's interpretation of Colo.Rev.Stat. § 17–2–201(5), instead of the contrary practice followed by the parole board at the time of his conviction, violates his due process rights and constitutional proscriptions against *ex post facto* laws.

■■■ Express federal and state constitutional proscriptions of *ex post facto* laws apply only to legislative acts. *Bouie v. City of Columbia*, 378 U.S. 347, 353–54, 84 S.Ct. 1697, 1702–03, 12 L.Ed.2d 894 (1964). Prohibitions against "judicial *ex post facto*" actions are based on the Due Process Clause. *Id.; Mahn v. Gunter, et al.,* 90–F–1250, slip op. at 6 (D.Colo. Oct. 3, 1991). The Due Process Clause does not prohibit retrospective application of a judicial decision interpreting a statute if it was sufficiently foreseeable to a defendant that the interpretation could have applied to that defendant's case. *See, e.g., Lerner v. Gill,* 751 F.2d 450 (1st Cir.), *cert. denied,* 472 U.S. 1010, 105 S.Ct. 2709, 86 L.Ed.2d 724 (1985); *Mahn,* slip op. at 6.

■■■ The statute here at issue had not been judicially interpreted before *Thiret*. The Colorado Supreme Court in *Thiret* held

---

1. As to the fourth and fifth grounds asserted, I further find persuasive Chief Judge Finesilver's recent opinion in *Mahn v. Gunter, et al.,* 90–F–1250, slip op. at 6–7 (D.Colo. Oct. 3, 1991).

2. Petitioner further asserts that the parole board is estopped from denying him mandatory parole. The Magistrate Judge found that argument unavailing. No issue raised in the petitioner's objection requires that I further address the estoppel argument.

that a sex offender is not entitled to mandatory parole even if application of accumulated good time credits would require immediate release. *Thiret*, 792 P.2d at 803, 806–07. Subsequently, in *Aue v. Diesslin*, 798 P.2d 436, 441 (Colo.1990), the Colorado Supreme Court stated:

"We believe that our decision in *Thiret* was foreseeable.... The holding in *Thiret* was based on the plain language of section 17–2–201(5)(a) ... [and that] clear, unambiguous provision applicable in this case was properly codified and readily available. The Parole Board's [prior] erroneous interpretation does not compel a different result because the Parole Board 'had not the power to deprive the state Supreme Court of the right to construe the statute authoritatively.'"

It thus appears that under *Aue*, the petitioner's assertion that retroactive application of *Thiret* violates the *Ex Post Facto* and Due Process Clauses must be rejected. *See Mahn*, slip op. at 6.

Petitioner argues, however, that a different result is required under *Knuck v. Wainwright*, 759 F.2d 856 (11th Cir.1985). In *Knuck*, the Florida Department of Corrections changed its interpretation of a statute governing the calculation and award of "gain time." Petitioner there asserted that the application of that new interpretation to his sentence, resulting in a reduction of his gain time, violated the *Ex Post Facto* Clause of the United States Constitution. *Id.* at 858.

Finding the statute at issue so ambiguous that the petitioner did not have fair notice that the new interpretation could be applied to his case, the Eleventh Circuit granted the habeas corpus petition. *Id.* at 858–59. However, I agree with the Colorado Supreme Court which, in *Aue*, considered foreseeable *Thiret's* interpretation of the unambiguous statutory language here at issue. Thus *Knuck* is distinguishable from the instant case.

■ Petitioner's final argument is that because inmates have a liberty interest in good time credits, a refusal to apply those credits in his case violates due process. The law is clear that if a state creates a

right to good time credits that *automatically* entitle an inmate to release before the full term of the sentence is served, denying early release constitutes a deprivation of liberty. *See Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

■ Colorado law allows for accumulation of credit for good time served. In the case of a sex offender, however, Colo.Rev. Stat. § 17–2–201(5)(a) leaves to the parole board's sole discretion whether to grant or deny parole prior to conclusion of a sex offender's sentence. Colorado thus has not granted sex offenders an automatic right to early release. Petitioner's unilateral expectation that good time credits might be applied to facilitate his early release is insufficient to support his assertion of a constitutionally protected interest. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972) (property interests entitled to constitutional due process protection depend on legitimate claim of entitlement).

Based on the above analysis and for the other reasons stated in the Magistrate Judge's recommendation, relief under the second and third grounds asserted must be denied.

Accordingly, IT IS ORDERED that:

(1) the Magistrate Judge's recommendation, as supplemented by this memorandum opinion and order, is adopted as the order of this court;

(2) the petitioner's objection to the Magistrate Judge's recommendation is overruled; and

(3) the petition for writ of habeas corpus is denied.

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

RICHARD M. BORCHERS, United States Magistrate Judge.

Petitioner Ira D. Lustgarden is currently serving a sentence at Arrowhead Correctional Center. He initiated this action by filing a *pro se* petition for writ of habeas

corpus pursuant to 28 U.S.C. § 2254. Petitioner asserts that his rights under the United States Constitution have been violated.

Pursuant to Rule 605 of the Local Rules of Practice of the United States District Court of the District of Colorado, this matter has been referred to Magistrate Judge Richard M. Borchers. Upon a review of the case file and the applicable law, a recommendation is made that the petition be denied.

As Petitioner is representing himself, his petition will be construed liberally. *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972); *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir.1979). A petition must be dismissed if, accepting the allegations as true, it appears beyond doubt that Petitioner can prove no set of facts in support of his claim that would entitle him to relief. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Meade v. Grubbs*, 841 F.2d 1512, 1526 (10th Cir.1988).

## BACKGROUND

On November 21 and 28, 1983, in the Jefferson County District Court, Petitioner pled guilty to three counts of sexual assault on a child and was sentenced to a total of sixteen years imprisonment. Petitioner commenced serving his sentences on November 21, 1983. The sentences originally were due to be completed (discharged) on May 30, 1999. Petitioner, however, has received one year, four months and five days of "earned time" credit for participation in rehabilitation programs. This credit was applied to his parole eligibility date (P.E.D.) and to his discharge date (date of completion of sentence). This credit accelerated his discharge date to January 24, 1998.

Petitioner also has received "good time" credit for good behavior. It is these good time credits which are at issue in this petition. Petitioner asserts that under Colo. Rev.Stat. § 17–2–201(5)(a), the good time credits should be applied to the calculation of his discharge date. Section 17–2–201(5)(a) provides that:

As to any person sentenced for conviction of a felony ... and as to any person sentenced for conviction of a sex offense as defined in section 16–13–202(5), C.R.S. ... the board has the sole power to grant or refuse to grant parole ...

If the credits were so applied, Petitioner now would be eligible to be released from incarceration. He claims that this statute gives him the right to mandatory parole.

In *Thiret v. Kautzky*, 792 P.2d 801 (Colo. 1990), the Colorado Supreme Court determined that Colo.Rev.Stat. § 17–2–201(5)(a) excluded from the mandatory parole provisions those persons sentenced for conviction of a sex offense as defined in Colo. Rev.Stat. § 16–13–202(5). *Thiret*, 792 P.2d at 806. Section 16–13–202(5) states, in pertinent part:

Sex offense means sexual assault, ... sexual assault on a child, as defined in section 18–3–405. C.R.S. ...

*Thiret*, 792 P.2d at 805. The court determined that "under the plain language of these sections, the Parole Board has discretion to deny or to grant parole to all persons sentenced for a sex offense as defined by section 16–13–202(5), even though they were not sentenced pursuant to the Sex Offenders Act." *Id.* at 807.

Thus, Respondents contend that the good time credits only deduct time from Petitioner's P.E.D., not his discharge date. They assert that parole for sexual offenders is discretionary and that the Parole Board has determined that Petitioner should not be released at this time. Petitioner claims that this interpretation of the application of good time credits and discretionary parole is a violation of his constitutional rights. Petitioner seeks to raise five grounds before this Court: 1) that the Colorado Supreme Court's interpretation of the laws governing parole for sex offenders creates ambiguities which can only be resolved by a federal court; 2) that denial of mandatory parole as it relates to him constitutes an *ex-post facto* law; 3) that denial of mandatory parole denies Petitioner due process and that the state should be estopped from revoking its long-standing promise of granting mandatory parole to sex offend-

ers; 4) that denying Petitioner mandatory parole violates his right to equal protection; and 5) that denial of mandatory parole violates Petitioner's right to be free from cruel and unusual punishment. Petitioner has exhausted his state remedies by means of a Colo.Crim.P. 35(c) post-conviction motion.

## GROUND ONE

 Petitioner asserts that "under the interpretation of the laws adopted by the Colorado Supreme Court, ambiguities are raised between those interpretations and the applicable statutes in effect during the commission of the crimes." Petitioner is complaining about a state court decision interpreting a state statute. A state supreme court's rulings on matters of state law are controlling in federal court. *Mullaney v. Wilbur*, 421 U.S. 684, 691, 95 S.Ct. 1881, 1886, 44 L.Ed.2d 508 (1975). Relief on this claim should be denied.

## GROUND TWO

Petitioner claims that denial of mandatory parole constitutes an *ex post facto* law. Article I, § 9 of the United States Constitution and Article II, § 11 of the Colorado Constitution ban *ex post facto* laws. These clauses forbid any retroactive application of a *new* law. Petitioner actually is protesting a change in the interpretation of the law as it was originally written. The *ex post facto* clause

> [f]orbids the imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred. Critical to relief under the *Ex Post Facto* clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was *prescribed when the crime was consummated.* Thus, even if a statute merely alters penal provisions accorded by grace of legislature, it violates the clause if it is both retrospective and *more onerous than the law in effect on the date of the offense.*

*Weaver v. Graham,* 450 U.S. 24, 30–31, 101 S.Ct. 960, 965, 67 L.Ed.2d 17 (1981) (emphasis added).

There has been no new statute which was implemented after Petitioner committed his offense. Petitioner asserts that the current interpretation of the statutes relating to parole for sex offenders is more onerous than what previously was applied. Prior to *Thiret*, the parole board's interpretation of the statutes was that parole for good time was mandatory for all prisoners. There was no judicial interpretation of the statutes before *Thiret. Aue v. Diesslin,* 798 P.2d 436, 438 n. 2 (Colo.1990). *Thiret* held that Colorado's statutory scheme never gave a statutory right of parole to sex offenders. An agency may retroactively change its practice to conform to the law without violating the *ex post facto* clause. *Caballery v. United States Parole Commission,* 673 F.2d 43, 47 (2d Cir.1982), *cert. denied,* 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982). While an agency cannot create a new regulation and apply it retroactively, it can amend its practice or procedure to conform to the statutory mandates in existence at the time of the commission of the offense. *Id.*

Section 17–2–201(5)(a) was in effect when Petitioner committed his offenses in 1983. The interpretation which was applied was consistent with the clear language of the statute. The Colorado Supreme Court has held that the correct application of this statute is that parole is discretionary for sex offenders under Colo.Rev.Stat. § 16–13–202(5), and therefore application of this statute does not violate the *ex post facto* clause. In *Devine v. New Mexico Department of Corrections,* 866 F.2d 339, 341 (10th Cir.1989), the court observed that "[f]or a law to be considered *ex post facto,* 'it must be retrospective, that is, it must apply to events occurring *before its enactment,* and it must disadvantage the offender affected by it.' " *Id.* (citation omitted). The court also stated that "[s]ince no act passed by the legislature after Devine's offense was applied, the *ex post facto* clause is not implicated." *Id.* at 342. Relief on Petitioner's *ex post facto* claim should be denied.

## GROUND THREE

Petitioner alleges that the due process clause has been violated by the retroactive interpretation of Colo.Rev.Stat. § 17–2–201(5)(a). The Tenth Circuit stated in *Devine, supra.,* that although the *ex post facto* clause may not be implicated by a retroactive ruling of a court, the due process clause may be violated by such a ruling "if it was unforeseeable." *Devine,* 866 F.2d at 345. Where a judicial decision under the applicable statute is "reasonably foreseeable," however, there is no violation of the due process clause. *See, e.g., Lerner v. Gill,* 751 F.2d 450 (1st Cir.1985), *cert. denied,* 472 U.S. 1010, 105 S.Ct. 2709, 86 L.Ed.2d 724 (1985); *Littlefield v. Caton,* 856 F.2d 344 (1st Cir.1988); *Glenn v. Johnson,* 761 F.2d 192 (4th Cir.1985).

The interpretation of the statute here was foreseeable and was undeniably authorized by its clear language. The Colorado Supreme Court in *Aue v. Diesslin,* 798 P.2d 436 (Colo.1990), stated that:

> The key test in determining whether the due process clause precludes the retrospective application of a judicial decision in a criminal case is whether the decision was sufficiently foreseeable so that the defendant had fair warning that the interpretation given the relevant statute by the court would be applied in his case. We believe that our decision in *Thiret* was foreseeable ... The holding in *Thiret* was based on the plain language of section 17–2–201(5)(a), 8A C.R.S. (1986), which states that as to the parole of "any person sentenced for conviction of a sex offense, as defined in 16–13–202(5) ... the board has the sole power to grant or refuse parole ..." Unlike *Devine,* the clear, unambiguous provision applicable in this case was properly codified and readily available. The Parole Board's erroneous interpretation does not compel a different result because the Parole Board 'had not the power to deprive the state Supreme Court of the right to construe the statute authoritatively.'

*Aue,* 798 P.2d at 441.

The interpretation in *Thiret* and *Aue* was foreseeable. The language of the statute clearly indicated that the power of the Parole Board to grant or deny parole was discretionary. The statute as it applied to sex offenders was interpreted judicially for the first time in *Thiret,* and the Colorado Supreme Court cannot be bound by the previous incorrect interpretation by the Parole Board. There has been no violation of Petitioner's due process rights.

In Ground Three, Petitioner also alleges that the Court's interpretation violates the "doctrine of promissory estoppel." It is unclear to whom he attributes this "promise" of mandatory parole. The Court's ruling in *Thiret* was its first opportunity to construe the statutes in question. Apparently, Petitioner believes that the Parole Board's prior erroneous interpretation of the statutes in the cases of other (earlier) inmates constituted a promise that the error would be repeated for all future potential parolees.

No person obtains a right to incorrect application of a statute. "[T]hose who deal with the Government are expected to know the law and may not rely on the conduct of Government agents contrary to law." *Heckler v. Community Health Services of Crawford,* 467 U.S. 51, 63, 104 S.Ct. 2218, 2225, 81 L.Ed.2d 42 (1984). While the public interest in law enforcement may be outweighed in rare cases, such cases are limited to those in which the citizen's interest "in some minimum standard of decency, honor and reliability in their dealings with their government" has been offended." *Id.* at 60, 104 S.Ct. at 2224. The Board's prior interpretation of the law was not a deliberate attempt to mislead the Petitioner, nor has there been any indecent or dishonorable activity. The Parole Board merely misinterpreted a legislative mandate by inferring a condition that was not found in the statute.

Petitioner's frustrated hopes for parole do not constitute sufficient harm to estop the State from applying its statutes correctly. "Only in rare circumstances have courts allowed the misconstructions of officials to estop the proper execution of state or federal law, and such cases have in-

volved extreme prejudice and harm beyond frustrated expectations." *Lerner v. Gill,* 751 F.2d 450, 459 (1st Cir.1985). Relief on Ground Three should be denied.

## GROUND FOUR

Petitioner asserts that the retroactive application of the Court's ruling denied him his right to equal protection. Petitioner is not a member of a "suspect class." Thus, the statutory scheme is constitutional if it bears any rational relationship to a legitimate state interest. *McGinnis v. Royster,* 410 U.S. 263, 93 S.Ct. 1055, 35 L.Ed.2d 282 (1973). In *Vasquez v. Cooper,* 862 F.2d 250 (10th Cir.1988), the court stated

> Unless it provokes strict judicial scrutiny, a state practice that distinguishes among classes of people will typically survive an equal protection attack so long as the challenged classification is rationally related to a legitimate governmental purpose. A state practice will not require strict judicial scrutiny unless it interferes with a "fundamental right" or discriminates against a "suspect class" of individuals.

*Id.* at 251–252.

■ The statutory classification which provided[1] that sex offenders are to be treated differently from other offenders with regard to parole is rationally related to legitimate state interests. Unlike other prisoners, obedient behavior in a prison does not indicate that a sex offender has truly reformed. Sex offenders are not placed in circumstances which show that they have rehabilitated. Because of their interest in ensuring that sex offenders have reformed, the legislature found a need to grant the Parole Board discretion so that each case could be examined on an individual basis. This discretionary treatment by the Board is therefore rationally related to a legitimate governmental purpose.

■ Petitioner also might be claiming that the fact that sex offenders are now treated differently than they were prior to

*Thiret* is a denial of equal protection. Although the earlier group of prisoners received a windfall due to the Board's erroneous interpretation, the state is not required to perpetuate its error. *Caballery v. United States Parole Com.,* 673 F.2d 43 (2d Cir.1982), *cert. denied,* 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982). Relief on Ground Four should be denied.

## GROUND FIVE

■ Petitioner alleges that he has been subject to cruel and unusual punishment because of the Parole Board's misinterpretation of § 17–2–201(5)(a) as it applied to sex offenders and the subsequent change in the application of the statute after *Thiret.* "A sentence within the statutory limits is not cruel and unusual punishment. Absent a showing of illegality or abuse of discretion, such a sentence will not be disturbed on appeal." *United States v. MacClain,* 501 F.2d 1006, 1013 (10th Cir.1974).

Petitioner's sentence is within the statutory limits. There has been no showing of illegality or abuse of discretion. Petitioner's parole has been delayed because the Parole Board still considered him a threat to society. Petitioner has no constitutional right to parole. *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 2103–04, 60 L.Ed.2d 668 (1979). Petitioner has not been subjected to cruel and unusual punishment. Relief on this claim should be denied.

IT IS THEREFORE RECOMMENDED that Petitioner Ira D. Lustgarden's petition be denied.

FURTHER, IT IS ORDERED that under Rule 605 of the Local Rules of Practice of the United States District Court for the District of Colorado, the parties shall have ten days after service hereof to file any written objections with the assigned District Judge. The party filing an objection must specifically identify those findings or recommendations to which objections are

---

**1.** All prisoners sentenced for crimes committed after July 1, 1985 are subject to discretionary parole. Colo.Rev.Stat. § 17–22.5–303.

being made. The District Court need not consider frivolous, conclusive, or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this document may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676–83, 100 S.Ct. 2406, 2412–16, 65 L.Ed.2d 424 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within ten days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

IT IS FURTHER ORDERED that a copy of Local Rule 605 be attached to the copy of this Recommendation sent to Plaintiff.

DATED and ENTERED this 23 day of August, 1991.

## ATTACHMENT

## LOCAL RULES OF PRACTICE

### Rule 605

### Prisoner Petitions

A. Subject to provisions of the United States Supreme Court Rules governing § 2254 and § 2255 cases, the uniform rules of ancillary forms for use in the district courts within the Tenth Circuit have been adopted. These rules apply to *pro se* petitions for writs of habeas corpus pursuant to 28 U.S.C. § 2241 and § 2254 and motions under Rule 35, Federal Rules of Criminal Procedure, and to civil rights complaint under 42 U.S.C. § 1983. Copies of the uniform rules and ancillary forms shall be made available upon request made to the clerk.

B. When presented for filing, *pro se* petitions under 28 U.S.C. § 2241, § 2254, and *pro se* complaint under 42 U.S.C. § 1983 shall be delivered to a magistrate who shall review the motion and affidavit to proceed *in forma pauperis* and rule thereon in accordance with 28 U.S.C. § 1915. If the

motion is granted, the magistrate shall promptly review the file and, if there is any basis for jurisdiction and possible merit, the magistrate shall direct the clerk to make service of process.

C. If the magistrate determines that the case may be dismissed pursuant to 28 U.S.C. § 1915(d) or F.R.Civ.P. 12, the magistrate shall prepare a recommendation and appropriate order for consideration by a district judge, who shall at that time be selected as provided in Rule 200.

D. These cases shall be assigned to a district judge drawn by lot and to a designated magistrate. The assigned magistrate shall review promptly all further pleadings and may:

1. Issue such orders as may be needed to obtain a complete record.

2. Conduct such evidentiary hearings as may be necessary, including the conduct of on-site depositions and investigations.

3. Prepare appropriate findings and recommendations for consideration by the district judge, copies of which shall be mailed to the parties who shall have ten (10) days after service thereof to serve and file specific written objections thereto. If no such objections are timely filed, the magistrate's proposed findings and recommendations may be accepted by the district judge and appropriate orders entered without further notice.

4. Obtain the expected release date of inmates filing complaints under 42 U.S.C. § 1983 to determine when plaintiffs may be available for trial.

(Revisions Effective February 1, 1984)