PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 07 2000
THOMAS K. KAHN
CLERK

_____

No. 99-10646
_____

Docket No. 96-00278-5-CV-1-CWH

WILLIS L. METHENY, on behalf of himself and all
other members of his class, EDWARD LANG, on behalf
of himself and all other members of his class, et al.,

                                             Plaintiffs-Appellees,

      versus

GARFIELD HAMMONDS, JR., Chairman of the
Georgia State Board of Pardons and Paroles
and in his official capacity,

                                             Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

**(July 7, 2000)**

Before EDMONDSON and MARCUS, Circuit Judges, and STROM*, District Judge.

_____

\*     Honorable Lyle E. Strom, U.S. District Judge for the District of Nebraska, sitting by designation..

EDMONDSON, Circuit Judge:

Plaintiffs, inmates sentenced under Georgia's recidivist statute, O.C.G.A. § 17-10-7(c), brought a section 1983 suit alleging that the Georgia parole board's decision to eliminate Plaintiffs' parole eligibility violated the Ex Post Facto Clause, and alternatively, the Due Process Clause. The magistrate judge granted summary judgment for Plaintiffs. We vacate and remand.

BACKGROUND

Plaintiffs are four Georgia state inmates who were convicted under the Georgia recidivist statute.[1] That statute, which was enacted originally in 1953, provides:

> [a]ny person who, after having been convicted under the laws of this state for three felonies or having been convicted under the laws of any other state or of the United States of three crimes which if committed within this state would be felonies, commits a felony within this state other than a capital felony must, upon conviction for such fourth offense or for subsequent offenses, serve the maximum time provided in the sentence of the judge based upon such conviction and <u>shall not be eligible for parole</u> until the maximum sentence has been served.

---

[1] Only four plaintiffs are in this case: Willis Metheny, Edward Lang, Paul Ivey, and Charlie Pritchett. Even though their complaint alleged a class action, no class action has been certified by the district court.

2

O.C.G.A. § 17-10-7(c) (emphasis added).[2]  For many years, this statute was not applied by the Georgia Board of Pardons and Paroles (the "Board").  Two Georgia Attorneys General had issued advisory opinions stating that the statute was an unconstitutional infringement on the Board's power under the Georgia Constitution and informing the Board that it was authorized to grant parole to recidivists convicted under the statute.[3]

Then in 1994, an appellate court spoke to the issue of the statute's validity for the first time.  The Georgia Supreme Court decided Freeman v. State, 440 S.E.2d 181 (Ga. 1994), which held that a similar statute -- which declared that certain crimes carry a life sentence without parole -- does not violate the constitutional authority of the Board because the statute "renders the defendant ineligible for parole in the first instance." Id. at 184.[4]  In the wake of the Georgia Supreme Court opinion, Georgia

---

[2]When plaintiffs were convicted the recidivist statute was codified at O.C.G.A. § 17-10-7(b). An amendment to the statute recodified it, without any changes to the language, in subsection (c). We shall hereinafter refer to the statute by its current codification at O.C.G.A. § 17-10-7(c).

[3]The advisory opinions stated, in part: "[I]nsofar as it would affect the granting of pardons and paroles, [§ 17-10-7(c)] is unconstitutional, void, and of no effect, and you would be authorized to ignore it in the consideration of applicants for parol[e]. . . . It is generally recognized that when the Constitution confers powers of pardon and parole upon a designated board, such powers are not subject to legislative control or restriction except as provided in the Constitution itself."  Ga. Op. Att'y Gen. 1954-56, at 591 (Sept. 30, 1955); accord Ga. Op. Att'y Gen. 69-431 (Oct. 10, 1969). These opinions, however, are not law, but at most persuasive legal authority.  See Campbell v. Poythress, 456 S.E.2d 110, 111 (Ga. Ct. App. 1995).

[4]And in January 1995, a constitutional amendment, which ratified previously enacted general laws restricting the Board's authority, went into effect.  Ga. Const. Art. IV, § II, ¶ II(b)(4) ("Any

3

Attorney General Michael Bowers issued an official opinion to the Chairman of the Board stating that the Board's authority to grant parole to recidivists was limited by the statute: the legislature could constitutionally enact statutes denying parole for certain crimes.[5]

Therefore, in 1995, the Board began applying the statute, redetermining the parole eligibility of inmates sentenced under O.C.G.A. § 17-10-7(c), and denying parole to recidivists.[6]  And in 1998, the Georgia Supreme Court ruled that the application of O.C.G.A. §17-10-7(c) to recidivists sentenced in 1990 -- that is, pre-Freeman -- was constitutional.  See Moore v. Ray, 499 S.E.2d 636, 637 (Ga. 1998).

When all four Plaintiffs committed their crimes, the Board was still not applying the statute and was granting parole to persons convicted under the recidivist

---

general law previously enacted by the General Assembly providing for life without parole or for mandatory service of sentences without suspension, probation, or parole is hereby ratified and approved . . . .").

[5] A later opinion by the Attorney General stated that the denial of parole eligibility to recidivists convicted before the state constitutional amendment would not violate the Ex Post Facto Clause: "[S]ince the provisions of statutes like . . . former O.C.GA. § 17-10-7(b) were validated as constitutional under Freeman prior to the enactment of the Reform Act [and the constitutional amendment], there is no retroactive application of maximum sentences in those instances.  The General Assembly rendered recidivists 'ineligible for parole in the first instance.'  Thus, the Board's power and authority are not invoked in those cases.  This analysis confirms the advice rendered by this Office in [1995].'"  Ga. Op. Att'y Gen. 97-10 (Mar. 18, 1997).

[6] The Board has amended its rules and regulations to limit parole eligibility to those for whom parole is authorized by law.  See Ga. Comp. R. & Regs. r. 475-3-.06.  Since ineligibility for parole is now codified in the regulations, we do not address whether a mere policy  of the Board would be "law" subject to the Ex Post Facto Clause.

4

statute. Plaintiffs have since been notified that they are ineligible for parole.[7] They brought this 42 U.S.C. § 1983 suit alleging (1) that the Board's elimination of Plaintiffs' parole eligibility violates the Ex Post Facto Clause, U.S. Const. Art. I, § 10, and, in the alternative, (2) that the Due Process Clause, U.S. Const. Amend. 14, has been violated through the Georgia Supreme Court's unforeseeable and retroactive interpretation of state law penalizing Plaintiffs. The parties filed cross motions for summary judgment. The magistrate judge concluded that the Board's retroactive application of its rules on parole violated the Ex Post Facto Clause and granted Plaintiffs' motion for summary judgment.[8]

## DISCUSSION

## EX POST FACTO CLAUSE

---

[7] In 1995, all four Plaintiffs received letters informing them that, due to the opinion of the Attorney General concluding that inmates sentenced pursuant to O.C.G.A. 17-10-7(c) could not be paroled, Plaintiffs would no longer be considered eligible for parole. For example, Plaintiff Metheny had received a tentative parole date of April 1995. Then, in March 1995, Plaintiff was notified that he was no longer eligible for parole and must serve his entire sentence.

[8] The final disposition of this case was decided by a magistrate judge by express consent of the parties.

5

Plaintiffs argue the retroactive change in the Board's rules and regulations -- applying the bar to Plaintiffs' parole eligibility -- violates the Ex Post Facto Clause. We disagree.[9]

The Ex Post Facto Clause prohibits States from enacting laws that, by their retroactive application, increase the punishment for a crime after it has been committed. See Garner v. Jones, 120 S. Ct. 1362, 1367 (2000). And a retroactive change in the laws about parole of inmates has been held to violate this prohibition when the law created "a sufficient risk of increasing the measure of punishment attached to the covered crimes." California Dep't of Corrections v. Morales, 115 S. Ct. 1597, 1603 (1995); accord Garner, 120 S. Ct. at 1368 (stating inquiry is whether new rule "creates a significant risk of prolonging respondent's incarceration"). We will suppose that the Board's change in position on parole creates such a risk: inmates sentenced pursuant to the statute will not be eligible for parole.

In another context, we have written that the Board's rules and regulations constitute laws subject to the Ex Post Facto Clause. See Akins v. Snow, 922 F.2d 1558, 1561 (11th Cir. 1991). In Akins, however, we reasoned that the then pertinent rules and regulations of the Board were "laws" because they were the product of a

---

[9]We review a grant of summary judgment de novo. See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1117 (11th Cir. 1993).

legislative delegation of power and thus had the force and effect of law.  See id.

(noting the Georgia legislature delegated by statute to the Board the authority to enact

rules and regulations about parole reconsideration).  This reasoning does not fit the

parole regulation at issue in this case: the 1953 statute expressly took away from the

Board the ability to grant parole to recidivists.  The statute was clear: the Board had

no authority to grant parole to recidivists.  The Board's regulation about granting

parole, when such regulation was clearly in conflict with the statute, was legally void:

without any authorization in the law.[10]

In this case, the state law – the statute -- has remained unchanged.  The new

Board regulation denying parole opportunities did not change the law.  The new

regulation was a correction. The new regulation corrected an erroneous interpretation

by the Board of a statute which clearly and without ambiguity had always precluded

the grant of parole to recidivists.

A new regulation which just corrects an erroneous interpretation (even if the

error was a reasonable one)[11] by an agency of a clear pre-existing statute does not

---

[10]The Georgia Supreme Court has held that the pertinent statute is constitutional.  See Moore,
499 S.E.2d at 636.  And agencies by interpretation cannot enlarge the scope of or change a properly
enacted statute.  See North Fulton Med. Ctr. v. Stephenson, 501 S.E.2d 798, 801 (Ga. 1998).

[11]Plaintiffs claim that a new interpretation of a statute by an agency can violate the Ex Post
Facto Clause if the previous interpretation was reasonable.  See Knuck v. Wainwright, 759 F.2d 856,
858-59 (11th Cir. 1985).  Again, Knuck is materially different: it concerned an interpretation of an
ambiguous statutory provision made under interpretive authority expressly delegated to the agency,

7

violate the Ex Post Facto Clause. The Clause "does not prohibit . . . the correction of a misapplied existing law which disadvantages one in reliance on its continued misapplication." Stephens v. Thomas, 19 F.3d 498, 500 (10th Cir. 1994) (concluding no ex post facto violation when department of corrections stopped applying good-time-credit statute to prisoners with life sentences after state attorney general informed department that this application was clearly prohibited by statute); accord Cortinas v. United States Parole Comm'n, 938 F.2d 43, 46 (5th Cir. 1991) (determining new regulation reflecting proper interpretation of statute did not violate Clause, and agreeing with Second Circuit that agency's misinterpretation cannot support an ex post facto claim); Glenn v. Johnson, 761 F.2d 192, 194-95 (4th Cir. 1985) (concluding that parole commission's change of regulation to conform with opinion of the state attorney general was no change in the law but merely a correction of an erroneous interpretation of the law: the statute unambiguously precluded the old regulation); Caballery v. United States Parole Comm'n, 673 F.2d 43, 47 (2d Cir. 1982) (holding no ex post facto claim where new regulation merely corrected a practice by parole commission that was contrary to a preexisting statutory provision).

The retroactive application of a new parole regulation to correct a prior erroneous interpretation of a duly-enacted statute cannot support Plaintiffs' ex post

which is not the case here.

8

facto claim. Therefore, the district court's grant of summary judgment, determining that application of the new policy to Plaintiffs violated the Clause, was error.

DUE PROCESS CLAUSE

Plaintiffs also argue that the Georgia Supreme Court's decision in <u>Freeman v. State</u>, 440 S.E.2d 181 (1994) -- limiting the Board's authority to grant parole -- ultimately resulted in the Board's elimination of Plaintiffs' parole eligibility and therefore penalizes individuals through an unforeseeable and retroactive interpretation of state law in violation of the Due Process Clause. We do not think so.[12]

Plaintiffs argue that the holding in <u>Freeman</u> was unforeseeable because it contravened prior legal authority, including the Georgia constitutional provision on the power of the Board, prior judicial decisions affirming the independent power of the Board, the prior opinions of the Attorney General, and the prior Board rules and regulations. Plaintiffs argue this preexisting authority conclusively established that the Board had independent power and the sole authority to grant parole; power and authority which could not be interfered with by the legislative and judicial branches.

---

[12]Though the court below did not reach this issue, it is a question of law, fully briefed and argued by the parties in the district court and on appeal; so we can address it here. <u>See Calloway v. Partners Nat'l Health Plans</u>, 986 F.2d 446, 449 n.1 (11th Cir. 1993).

Therefore, Plaintiffs say that the decision in Freeman was unforeseeable in that it allowed a limitation on the Board's parole powers.

The Supreme Court has said that an "unforeseeable state-court construction of a criminal statute" applied retroactively can violate the Due Process Clause. Bouie v. City of Columbia, 84 S. Ct. 1697, 1703 (1964); accord United States v. McQueen, 86 F.3d 180, 183 (11th Cir. 1996) ("A new judicial doctrine cannot be applied retroactively if it was an 'unexpected and indefensible' break from the existing case law. . . .") (citation omitted).[13] The Supreme Court has held judicial decisions to be unforeseeable in two contexts: (1) if a criminal statute is narrow and precise on its face, a judicial expansion of the criminal statute may be considered unforeseeable, see Bouie, 84 S. Ct. at 1701-02, and (2) a court significantly departing from its own precedent may be unforeseeable. See Marks v. United States, 97 S. Ct. 990, 993-95 (1977).

Plaintiffs rely on Bouie for their proposition that the Georgia Supreme Court's decision in Freeman and the application of that decision in Moore -- unduly and retroactively expanded the criminal law by declaring laws limiting parole, like the one

---

[13]We assume, without deciding, that the due process limitation applies in this case. But we see that the circuits are not unanimous in this conclusion. See United States v. Newman, 203 F.3d 700, 702 (9th Cir. 2000) (noting that while some circuits have held that due process concerns are implicated by both after-the-fact increases in punishment and ex post facto construction of substantive criminal statutes, the Ninth Circuit has limited the due process application to the latter situation).

10

at issue in this case, to be constitutional -- violates due process. <u>Bouie</u> concerned a situation in which a court, by interpretation, had expanded a criminal statute beyond its plain language.[14] 84 S. Ct. at 1700-01. But in the present case, the state court decided that a statute was constitutional and meant what the express words said; the Georgia Supreme Court did not "interpret" the statute to expand its criminal scope.[15] See <u>Thompson v. Nagle</u>, 118 F.3d 1442, 1449 (11th Cir. 1997) ("When a court

---

[14]<u>Bouie</u> involved a South Carolina criminal trespass statute and the racial desegregation of the South. The statute on its face prohibited "entry upon the lands of another . . . after notice from the owner or tenant prohibiting such entry." <u>Bouie</u>, 84 S. Ct. at 1700. Protestors, who were staging a sit-in at a restaurant -- and who, both parties agreed, had not received notice before entry or before they seated themselves in the restaurant -- were convicted under this statute. <u>See id.</u> The South Carolina Supreme Court upheld the convictions, construing the statute to encompass "not only the act of entry . . . after receiving notice not to enter, but also the act of remaining . . . after receiving notice to leave." <u>Id.</u> at 1701. The United States Supreme Court reversed the convictions, stating that, because this reading was an unforeseeable and retroactive expansion of a clear statute (and inconsistent with prior state supreme court readings of the statute), its application to the protestors violated due process. <u>See id.</u> at 1703-04 ("Petitioners did not violate the statute as it was written. . . .").

[15]In <u>Moore</u>, the Georgia Supreme Court reasoned this way: "[t]here has been no unforeseeable enlargement of a criminal statute in the enforcement of O.C.G.A. § 17-10-7(c): the language of the statue is clear and unmistakable in its command, and as noted above, it has never been found unconstitutional by this court." <u>Moore</u>, 499 S.E.2d at 637.

The Georgia Supreme Court did not think its <u>Freeman</u> decision revolutionary:
The State argues that [the statute providing for life without parole] is unconstitutional and violative of [the Georgia Constitution] because it imposes legislative restrictions on the power of the Board of Pardons and Paroles to grant parole and thus violates the separation of powers. This argument, too, is without merit. "The power to create crimes and to prescribe punishment therefor is legislative." <u>Johnson v. State</u>, 169 Ga. 814, 817, 152 S.E.2d 76 (1929). The passage by the legislature of a statute providing for a sentence of life without parole, like the passage of legislation establishing the death penalty, does not impinge on the authority of the Board but, rather, renders the defendant ineligible for parole in the first instance.
<u>Freeman</u>, 440 S.E.2d at184.

11

clarifies but does not alter the meaning of a criminal statute, the Ex Post Facto Clause

is not implicated."); see also Aponte v. Gomez, 993 F.2d 705, 708 (9th Cir. 1993)

("[the state court] construed the sentencing scheme in accordance with the principles

of statutory construction and its conclusion is certainly not 'unexpected' or

'indefensible.'"); Lustgarden v. Gunter, 966 F.2d 552, 554 (10th Cir. 1992)

(concluding interpretation foreseeable because dictated by plain language of statute).

Nor did the Georgia Supreme Court change or expand a law it had previously

announced, or break with its own precedent in declaring such laws to be constitutional

limits on the Board's power.[16] That lower state courts had struck down a few other

attempts to limit the Board's power[17] or that the Attorney General had issued an

opinion stating that the statute was unconstitutional is not decisive.[18] These opinions

_____

[16]Plaintiff argues that Freeman is inconsistent with a prior Georgia Supreme Court decision in Charron v. State Bd. of Pardons and Paroles, 319 S.E.2d 453 (1984). That decision, not "disagreeing" with the lower courts that an "independent" Board is envisioned by the Georgia Constitution, determined that two statutes were constitutional because they only required the Board to notify counties before it considered parole but did not affect the Board's consideration of parole. Id. at 455.

[17]The appellate court decisions, which Plaintiffs cite, concerning the Board's power, did not construe this statute. And, thus, did not decide the pertinent question. See, e.g., Stephens v. State, 428 S.E.2d 661, 663 (Ga. Ct. App. 1993) (determining that Board has executive power concerning terms and condition of paroles, thus judicial attempt to condition parole on waiver of Fourth Amendment rights was nullity).

[18]As we stated, opinions of the Attorney General are, at most, persuasive authority. See Campbell v. Poythress, 456 S.E.2d 110, 111 (Ga. Ct. App. 1995). And the proffered deposition of

12

of others do not deprive a state supreme court of its power to construe a statute finally.

This principle is particularly true under Georgia law because the Supreme Court has exclusive appellate jurisdiction to consider the constitutionality of a statute. See Ga. Const. art. VI, § VI, ¶ II; Burson v. State, 359 S.E.2d 731, 732 (Ga. Ct. App. 1987) (court of appeals has no authority to determine constitutionality of state statute).[19] And these opinions from other entities do not make the Georgia Supreme Court's decision unforeseeable; the Georgia Supreme Court had not previously ruled on the constitutionality of this or similar statutes defining the limits of the Board's power.[20] See McQueen, 86 F.3d at 184 (noting that lower courts had rendered decisions later determined to be erroneous by a higher court does not violate due

the Board's Director of Legal Services, in which he opines that the Freeman decision is "difficult to understand or interpret and inconsistent with 40 years of practice and law" in Georgia, is not decisive and does not constrain the Georgia Supreme Court either. Cf. Thompson v. Talmadge, 41 S.E.2d 883, 890 (Ga. 1947) (stating that "determining the meaning of the [state] Constitution, which is binding on everyone, was the exclusive function of the courts").

[19]See also Lerner v. Gill, 751 F.2d 450, 457 (1st Cir. 1985) (no ex post facto violation, notwithstanding contrary attorney general and parole board interpretation, because they could not deprive the state supreme court of its right to construe a state statute authoritatively and were not exercising powers of their own to legislate such matters: "the ex post facto clause does not give a prisoner a vested right to a favorable, but erroneous, interpretation of the law").

[20]Plaintiffs cite us no cases in which the Georgia Supreme Court held a statute to be unconstitutional because it limited the Board's authority. And a validly imposed limitation on the Board's granting of parole was not unheard of; in 1993, before the Freeman decision, the Board enacted a regulation refusing parole consideration to persons sentenced to life without parole pursuant to a state statute enacted in 1993, which allowed courts to sentence to life without parole. The Board did not treat this limitation as void.

13

process); see also Hamm v. Latessa, 72 F.3d 947, 955 (1st Cir. 1995) ("[I]t would be unprincipled to declare by federal fiat that the Due Process Clause broadly nullifies the Commonwealth's power to construe and apply its laws correctly.").[21] The Georgia Supreme Court upheld a statute which had been erroneously interpreted by the Attorney General; this judicial act does not constitute an ex post facto violation of the Due Process Clause. See Crowley v. Landon, 780 F.2d 440, 444 (4th Cir. 1985).

The Freeman decision neither expands the statute in question beyond its express terms nor contradicts preexisting Georgia Supreme Court precedent on the scope of the Board's authority. We conclude that the retroactive application of the Georgia Supreme Court's decision does not violate Due Process. To conclude otherwise would, in effect, require us to assume that a state statute was unconstitutional because of a prior construction by state governmental bodies without the authority to declare law in this area. That the erroneous interpretations were later declared invalid and corrected by the state supreme court does not entitle Plaintiffs to the benefit of those mistaken interpretations.

------

[21] Just because the Georgia Supreme Court had not provided a decision on the precise issue earlier (the State did not pursue a ruling on the issue in the courts and a prisoner would not have challenged a favorable parole rule) does not make the decision unforeseeable; the legal arguments were available. See Green v. State, 262 S.E.2d 68, 69 (Ga. 1979) (noting that merits of argument that this statute is  unconstitutional limit on the Board's power had never been decided). Nor does the amount of time that the Board's erroneous interpretation was in place change our conclusion. See Lerner, 751 F.2d at 459 ("It is a fact of life, . . . that new laws are often not challenged and finally interpreted until a number of years go by.").

CONCLUSION

In this case, the statute and the punishment it imposes have been unchanged since enactment in 1953; the application of the statute to Plaintiffs does not violate Due Process or the Ex Post Facto Clause. The district court improperly granted summary judgment for the Plaintiffs. The judgment of the district court is VACATED and the case is REMANDED for further determinations consistent with this opinion.