**Robert THIRET, Petitioner–Appellant,**

v.

**Walter KAUTZKY, Executive Director of the Colorado Department of Corrections, Respondent–Appellee.**

**No. 89SA240.**

Supreme Court of Colorado, En Banc.

May 29, 1990.

Rehearing Denied June 18, 1990.

Philip A. Cherner, Stayton & Brennan, Denver, for petitioner-appellant.

Duane Woodard, Atty.Gen., Charles B. Howe, Deputy Atty.Gen., Richard H. Forman, Sol.Gen., and Robert C. Ripple, Asst. Atty. Gen., Denver, for respondent-appellee.

Justice MULLARKEY delivered the Opinion of the Court.

This is an appeal of a denial of a writ of habeas corpus. The petitioner, Robert Thiret, brought this action in Fremont County District Court against respondent Walter Kautzky, the Executive Director of the Colorado Department of Corrections (the Department), asking the court to order his release from the custody of the Department. Thiret argued that under the statutory provisions governing parole, he was entitled to mandatory release from prison as of February 23, 1989. The trial court denied his petition, finding that the Colorado State Board of Parole (Parole Board) acted within its discretion in denying Thiret parole. We reverse.

I.

This case arises out of the abduction and sexual assault of a child in August 1983. Thiret pled guilty to one count of attempted first-degree murder, section 18–3–102(1)(a), 8 C.R.S. (1978) (current version at section 18–3–102(1)(a), 8B C.R.S. (1986)), and section 18–2–101, 8 C.R.S. (1978) (amended 1989, current version at section

18–2–101, 8B C.R.S. (1986 & 1989 Supp.)), and one count of sexual assault on a child, section 18–3–405, 8 C.R.S. (1978 & 1984 Supp.) (amended 1986, 1989, current version at section 18–3–405, 8B C.R.S. (1986 & 1989 Supp.)). Pursuant to an agreement between Thiret and the prosecutor, on September 26, 1984 Thiret was sentenced to ten years of imprisonment plus one year of parole on the attempted murder charge, and four years of imprisonment plus one year of parole on the sexual assault on a child charge. The two sentences were imposed to run concurrently. Testimony presented at the habeas corpus hearing indicated that the Department initially calculated Thiret's parole date as February 23, 1989, and classified his parole as "mandatory." On November 29, 1988, the Parole Board considered Thiret's application for parole and granted the application effective February 23, 1989. Subsequent to the Parole Board's decision granting parole to Thiret, the Parole Board requested and received an oral opinion from an assistant attorney general which indicated that an individual sentenced for any sex offense, as defined by section 16–13–202(5), 8A C.R.S. (1986), was not subject to mandatory parole. The Parole Board was advised that such persons could be granted or denied parole at the Parole Board's discretion. In January 1989, the Parole Board reversed its prior decision and voted to deny parole to Thiret. Thiret brought this action in the district court seeking a writ of habeas corpus, alleging that parole was mandatory and he was entitled to immediate release. The district court denied the requested relief and Thiret took this direct appeal.[1]

## II.

Thiret offers two arguments in support of his petition for a writ of habeas corpus. First, he argues that both offenses for which he was convicted, attempted first-degree murder, and sexual assault on a child, are governed by the mandatory parole provisions of section 16–11–310, 8A C.R.S. (1986), which require release when good time credits plus time served equals the sentence received[2] and are not governed by the discretionary parole provision of section 17–2–201(5)(a). As the Department concedes, if parole is mandatory for both substantive offenses for which Thiret was sentenced, then Thiret is entitled to immediate release from the custody of the Department because he has accrued sufficient "good time" credits pursuant to section 17–22.5–301(2), 8A C.R.S. (1986). Thiret further argues that even if the Parole Board had discretion to grant or deny him parole with respect to the sexual assault on a child charge, he is entitled to immediate release because he already has been incarcerated for a time period greater than the four years of imprisonment plus one year of parole sentence he received on the sexual assault charge, and he has accrued sufficient good time credits to require that he be paroled on the attempted murder charge. We address each of Thiret's contentions in turn.

### A. Parole of Persons Convicted of a "Sex Offense" as Defined by Section 16–13–202(5).

■ In determining whether the Department must release Thiret, it is useful to review the recent history of the statutes governing parole. In the past few years, the state sentencing laws, including the statutes relevant to parole, have undergone a series of major changes. In the late 1970s, the legislature changed the parole and sentencing system from one of "indeterminate" sentencing, which placed substantial discretion in the sentencing courts

---

1. Subsequent to the trial court's decision, the Parole Board, in February 1990, once again denied parole to Thiret.

2. Section 16–11–310, repealed in 1988, provided:
   **Release from incarceration.** Except as provided in section 7 of article IV of the state constitution relating to the power of the governor to grant reprieves and pardons, an in-

carcerated person shall be unconditionally released and discharged upon the expiration of his sentence, less the deductions authorized in article 22.5 of title 17, C.R.S.
   See also Bynum v. Kautzky, 784 P.2d 735, 739 (Colo.1989) (§ 16–11–310 established mandatory date of release on parole).

and Parole Board,[3] to "determinate" sentencing with "mandatory" parole, which substantially removed all discretion from the sentencing courts and Parole Board. Subsequent legislation relaxed the rigid requirements of "determinate" sentencing and, ultimately, the legislature adopted the present "modified determinate" sentencing system which restores some discretion to the sentencing courts and Parole Board.

Prior to the enactment of "mandatory" parole provisions by the legislature in 1979, the parole of prisoners from correctional institutions was a matter within the *sole* discretion of the Parole Board. Inmates serving prison sentences for crimes committed before July 1, 1979 could receive the following three types of credits which potentially reduced their sentences: (1) "statutory good time" under section 17–22.5–201(1); (2) "trusty time" under section 17–22.5–201(2); and (3) "meritorious time" under section 17–22.5–201(3). *Price v. Mills,* 728 P.2d 715, 717 (Colo.1986).[4] However, credits earned merely determined the date on which the inmate became *eligible* for parole. Once such an inmate became eligible for parole, the Parole Board had complete discretion to grant or deny parole to that person. *See* § 17–2–201(5)(a), 8A C.R.S. (1986); *People v. Montgomery,* 669 P.2d 1387, 1392 (Colo.1983).

In 1979 the legislature adopted the new "determinate" sentencing law, H.B. 1589, popularly known as the "Gorsuch" bill. Ch. 157, 1979 Colo.Sess.Laws 664. The Gorsuch bill, effective July 1, 1979, departed from the previous discretionary parole system and, in effect, adopted a system of "mandatory parole."[5] Although there is no one provision in the Gorsuch bill which specifically made parole mandatory for post-July 1, 1979 offenses, several provisions in that bill, as well as in subsequent amendments, considered together, clearly had this effect.[6]

---

**3.** For example, under the pre-July 1, 1979 sentencing system, a judge could sentence a person convicted of a class 2 felony to between ten years and fifty years in prison. Section 18–1–105(1), 8 C.R.S. (1973). The potential for gross disparity in the sentences received by similarly situated defendants in different jurisdictions was doubtlessly one reason supporting the adoption of "determinate" sentencing. *See* Ch. 157, Sec. 15, § 18–1–102.5(b), 1979 Colo.Sess.Laws 664, 668–69 (one purpose of sentencing provisions was "[t]o assure the fair and consistent treatment of all convicted offenders by eliminating unjustified disparity in sentences, providing fair warning of the nature of the sentence to be imposed, and establishing fair procedures for the imposition of sentences"). *See also, generally,* Multz, *Presumptive Sentencing; Colorado's New Sentencing Act,* 8 Colo.Law. 2349 (1979).

**4.** Persons serving time for crimes committed prior to July 1, 1979 may still receive credits under the pre-July 1, 1979 system, reducing their time to be served. *Price v. Mills,* 728 P.2d 715, 717 (Colo.1986).

**5.** In 1977, the legislature adopted an earlier version of H.B. 1589. Ch. 216, 1977 Colo.Sess.Laws 861. The governor purported to veto that legislation, as well a number of other bills passed by the General Assembly during the 1977 session. When questions were raised considering the procedures followed by the governor in issuing his veto, both the governor and the legislature petitioned this court for an advisory opinion. In *In re Interrogatories of the Governor Regarding Certain Bills of Fifty–First General Assembly,* 195 Colo. 198, 578 P.2d 200 (1978), this court held that the governor's veto of the bill including the 1977 parole provision was ineffective. That section, by its terms, was to become effective on July 1, 1978. To prevent such a result, the governor called a special session of the legislature which changed the effective date of the 1977 statute to April 1, 1979. The Gorsuch bill replaced the 1977 legislation.

**6.** *See* § 16–11–302 (courts must sentence persons convicted of felonies to definite term); § 16–11–304 (same); § 16–11–310 (incarcerated person shall be unconditionally released upon expiration of sentence, less good time and earned time deductions); § 17–2–201(5)(a) (parole of persons sentenced for crimes committed prior to July 1, 1979 is discretionary with parole board); § 17–2–213 (provisions granting parole board power to establish duration of parole shall apply only to persons sentenced for felonies committed prior to July 1, 1979); § 17–22.5–301(1) and (2) (good time credits may vest for persons sentenced for crimes committed on or after July 1, 1979 but before July 1, 1985); *compare* § 17–22.5–303(6) (any person sentenced for class 2, class 3, class 4, or class 5 felony committed on or after July 1, 1985, shall be eligible for parole after he has served the sentence imposed less any time authorized for good time and earned time; parole, however, is at the discretion of the parole board). *See also Renneke v. Kautzky,* 782 P.2d 343, 345 (Colo. 1989) (court compares discretionary nature of parole for offenses committed after July 1, 1985 with mandatory nature of parole of earlier statutes); *Bynum v. Kautzky,* 784 P.2d 735, 739

In 1988, the legislature amended the parole provisions to once again grant the Parole Board discretion to grant or deny parole. *See* § 17–22.5–301(3), 8A C.R.S. (1986) (good time credits no longer vest); § 17–22.5–303(6), 8A C.R.S. (1986) (Parole Board had discretion to deny person parole even though credits accrued make person parole eligible); *Renneke v. Kautzky*, 782 P.2d 343, 346 (1989) (same). Thus, in Colorado, with respect to the statutory scheme governing parole, we have three general classes of persons now serving sentences in our prisons:

1. Those serving sentences for crimes committed prior to July 1, 1979.

2. Those serving sentences for crimes committed on or after July 1, 1979 but before July 1, 1985.

3. Those serving sentences for crimes committed on or after July 1, 1985.

Upon accruing sufficient credits to become eligible for parole, persons fitting under the first and third categories may be granted or denied parole at the discretion of the Parole Board. Good time and earned time credits earned by an inmate towards his release, for persons coming under these categories, merely establish the date of parole eligibility. A person fitting under the second category, however, must be paroled upon reaching the parole date as determined by deducting vested good time and earned time credits from the person's sentence.[7]

Because Thiret was sentenced for a crime which was committed after July 1, 1979 but before July 1, 1985, he is within the mandatory parole group unless the Department can point to a statutory provision excluding him. The Department argues that persons like Thiret who are convicted of sexual assault on a child are exempt from the mandatory parole provisions and may be paroled only at the discretion of the Parole Board. Section 17–2–201, 8A C.R.S. (1986), states in relevant part:

(5)(a) As to any person sentenced for conviction of a felony committed prior to July 1, 1979, or of a misdemeanor *and as to any person sentenced for conviction of a sex offense, as defined in section 16–13–202(5), C.R.S.,* or a class 1 felony and as to any person sentenced as a habitual criminal pursuant to section 16–13–101, C.R.S., the board has the sole power to grant or refuse to grant parole and to fix the condition thereof and has full discretion to set the duration of the term of parole granted, but in no event shall the term of parole exceed the maximum sentence imposed upon the inmate by the court or five years, whichever is less.

(Emphasis added.) The Department argues that sexual assault on a child comes within the exception of section 17–2–201(5)(a), because it is a "sex offense" as defined in section 16–13–202(5). Section 16–13–202 defines a "sex offense" as follows:

(5) "Sex offense" means sexual assault, except misdemeanor sexual assault in the third degree, as set forth in part 4 of article 3 of title 18, C.R.S.; *sexual assault on a child,* as defined in section 18–3–405, C.R.S.; aggravated incest, as defined in section 18–6–302, C.R.S.; and an attempt to commit any of the offenses mentioned in this subsection (5).

(Emphasis added.) Because sexual assault on a child is specifically defined as a "sex offense" under section 16–13–202, the Department concludes that Thiret was subject to discretionary parole on that charge.

Thiret urges a different construction of section 17–2–201(5)(a). Under his theory, section 17–2–201(5)(a) includes in its discretionary parole provision only those persons sentenced pursuant to the Sex Offenders Act, section 16–13–201 to 16–13–216, 8A C.R.S. (1986). Because Thiret was not sentenced pursuant to the indeterminate sentencing scheme of the Sex Offenders Act,

(Colo.1989) (earned time and good time provisions of sections 17–22.5–301 to 17–22.5–302 establish mandatory date of release on parole).

7. We noted in *Price v. Mills,* 728 P.2d 715, 718 (Colo.1986), that in administering good time

credit provisions, the Department assumes that inmates are entitled to receive good time credits. These credits are disallowed only after misconduct has been established.

Thiret argues that parole for his sexual assault on a child conviction is governed by the mandatory parole provisions. In support of his argument, Thiret has supplied this court with a tape of the hearings before the relevant legislative committees where the major sponsor of the mandatory parole legislation, Representative Gorsuch, seems to indicate that the reference to "sex offense" in section 17–2–201(5)(a) was meant to include only those sentenced pursuant to the Sex Offenders Act.[8]

■ In interpreting the meaning of particular statutory provisions, we seek to discern the intent of the legislature. *Bynum v. Kautzky,* 784 P.2d 735 (Colo.1989). To discern legislative intent, we look primarily to the language of the statute itself and give effect to the statutory terms in accordance with their commonly accepted meanings. *Anderson v. Kautzky,* 786 P.2d 1082, 1085 (Colo.1990); *Kern v. Gebhardt,* 746 P.2d 1340, 1344 (Colo.1987). When the meaning of a statute is clear, it is unnecessary to examine its legislative history. *People v. Davis,* 794 P.2d 159, 183 (Colo. 1990); *People v. Armstrong,* 720 P.2d 165, 167 (Colo.1986).

■ Thiret notes that prior to January 1989, when the Parole Board rescinded its previous decision to grant him parole, the Parole Board interpreted section 17–2–201(5)(a) in the manner now urged to this court by Thiret. Although the Department declined to admit to such prior interpretation both in oral arguments and in its briefs before this court, the trial court found otherwise. The record fully supports the finding of the trial court that prior to January 1989, the Parole Board interpreted the provisions in question in the manner now urged by Thiret. Because of this inconsistent interpretation by the Parole Board, we reject the Department's argument that this court should defer to the interpretation which the Parole Board adopted in this

case. When the interpretation given a statute by the agency charged with its administration has not been uniform, courts have no reason to give deference to that administrative interpretation. *Colorado Common Cause v. Meyer,* 758 P.2d 153, 159 (Colo.1988). Thus, our determination of the effect of the parole provisions at issue here proceeds from an independent analysis of the statutory scheme.

We note that by its terms, section 17–2–201(5)(a) excludes from the mandatory parole provision those persons "sentenced for conviction of a sex offense, *as defined* in section 16–13–202(5)" (emphasis added). This is in contrast to the reference in subsection (5)(a) to another category of persons excluded from the mandatory parole provisions, namely, a person "sentenced *as* a habitual criminal *pursuant to* section 16–13–101" (emphasis added). If the legislature wished to include only persons sentenced pursuant to the Sex Offenders Act, it would have used language similar to that used in that subsection referencing the Habitual Criminal Act. Instead, the legislature included in the discretionary parole provision of subsection (5)(a) all persons sentenced *for* a sex offense as *defined by* section 16–13–202(5). Because Thiret was sentenced for a conviction of sexual assault on a child, under the definition of section 16–13–202(5), he was sentenced for a conviction of a "sex offense" and thus his parole on that conviction is discretionary with the Parole Board.

■ Our conclusion that section 17–2–201(5)(a) was meant to include all persons convicted of a sex offense is supported by the treatment of parole in the Sex Offenders Act. At the time the Gorsuch bill was adopted, the Sex Offenders Act already provided for the discretionary parole of offenders sentenced pursuant to that act. In section 16–13–216(3), 8A C.R.S. (1986), the Parole Board is granted complete discretion as to the "parole and reparole of all

8. Thiret provided the court with an audiotape of a portion of the hearings on H.B. 1589 before the House and Senate Judiciary Committees on March 13, 1979 and March 23, 1979, respectively, where bill sponsor Representative Gorsuch several times indicated that the reference in

subsection (5)(a) to "sex offense" was intended to include those persons sentenced pursuant to the Sex Offenders Act. However, because we find that the plain language of the statute precludes this construction, we need not examine its legislative history.

persons committed pursuant to section 16–13–203, regardless of the facility in which those persons are confined."[9] In construing a statute, we presume that every part of the statute was intended to be effective. *People v. Guenther*, 740 P.2d 971, 976 (Colo.1987). To adopt Thiret's construction of the statute, that the reference in subsection (5)(a) to the Sex Offenders Act was intended only to apply to persons sentenced pursuant to the Sex Offenders Act, would render meaningless the language of subsection (5)(a). There was no need for the legislature to state in the Gorsuch bill that the parole of persons sentenced pursuant to the Sex Offenders Act was discretionary with the Parole Board when the Sex Offenders Act already provided for such discretion.

We find, under the plain language of these sections, that the Parole Board has discretion to deny or to grant parole to all persons sentenced for a sex offense as defined by section 16–13–202(5), even though they were not sentenced pursuant to the Sex Offenders Act. Thus, we reject Thiret's proposed statutory construction.

### B. *Discretionary Parole and Attempted Murder.*

We turn next to Thiret's conviction of attempted murder. The Department concedes that Thiret was sentenced concurrently on his convictions for attempted murder and sexual assault on a child, and that Thiret already has been in prison for a period longer than his entire sentence for sexual assault. Further, the Department concedes that, had Thiret been sentenced only for sexual assault, he already would have been released because he would have completed serving his entire sentence of four years in prison and one year of parole. Likewise, had Thiret been sentenced under the attempted murder charge alone, the Department agrees that Thiret would have been released under the mandatory parole provisions applicable to that charge. Despite these concessions, however, the Department argues that Thiret lawfully continues to serve time on both his attempted murder and his sexual assault convictions. It reaches this conclusion because Thiret was found guilty of both charges, and because section 17–22.5–101 requires that the Parole Board construe several sentences as one continuous sentence.[10] From this basic principle, the Department argues that the Parole Board may take the discretionary parole provisions governing the sex assault on a child conviction and apply those provisions to Thiret's sentence for attempted murder.

9. Section 16–13–216, 8A C.R.S. (1986) provides, in full, as follows:

> **Powers and duties of the board.**
> (1)(a) Within six months after a person is committed pursuant to section 16–13–203, and at least once during each twelve months thereafter, the board shall review all reports, records, and information concerning said person, for the purpose of determining whether said person shall be paroled.
> (b) The board shall, in each instance, make a written ruling and shall serve a copy of the ruling upon the said person.
> (2) The board is authorized and it is its duty to order the transfer of any person committed pursuant to section 16–13–203, if the board deems it to be in the best interests of said person and the public, to any facility under the jurisdiction of the department or to the department of institutions subject to the availability of staff and housing.
> (3) The board is granted exclusive control over the parole and reparole of all persons committed pursuant to section 16–13–203, regardless of the facility in which those persons are confined.
> (4) The board is authorized to parole and reparole, and to commit and recommit for violation of parole, any person committed pursuant to section 16–13–203.
> (5) The board is authorized to issue an absolute release to any person committed pursuant to section 16–13–203, if the board deems it in the best interests of that person and the public and that the person, if at large, would not constitute a threat of bodily harm to members of the public.
> (6) Except as otherwise provided in this part 2, the board has all the powers conferred and duties imposed upon it with respect to the parole of prisoners generally, in the parole and supervision of persons committed pursuant to section 16–13–203.

10. Section 17–22.5–101 provides in relevant part: "For the purposes of this article, when any inmate has been committed under several convictions with separate sentences, the department shall construe all sentences as one continuous sentence."

Under its construction of the statutes, the Department asserts that the Parole Board has discretion to grant or deny Thiret parole on his conviction for attempted murder. These two sentences are governed by a "hybrid" or "composite" statute, the Department argues. Therefore, the ten-year determinate sentence for attempted murder is subject to the discretionary parole provisions of section 17–2–201(5)(a) applicable to Thiret's conviction for sexual assault on a child. We disagree. *Price v. Mills,* 728 P.2d 715 (Colo.1986), is dispositive.

In *Price v. Mills,* we considered the propriety of the procedures adopted by the Department for calculating credits applied to reduce the actual amount of time served by convicted felons. The Department in that case was faced with the problem of how to compute good time and earned time credits of inmates who were serving sentences both for crimes committed before July 1, 1979, and for crimes committed after July 1, 1979. Because the pre–1979 convictions were governed by the discretionary parole provisions, but the post-July 1, 1979 crimes were governed by the Gorsuch bill's mandatory parole provisions, the Department was faced with a conflict. Instead of administering the various credits to reduce each sentence separately, the Department applied a single system of credits on a "composite governing sentence" with respect to those sentenced for multiple crimes committed both before and after the changes were made in the parole system. *Price,* 728 P.2d at 718. The governing sentence was determined by considering all of the inmate's sentences together to arrive at a "minimum governing sentence" and a "maximum governing sentence." If the inmate's sentence for the pre-July 1, 1979 offense produced the longest "incarceration effect" then it was treated as the "governing" sentence, and the Department awarded credits pursuant to the pre-July 1, 1979 credit scheme towards the entire composite sentence. *Id.* at 718. If the sen-

tence for the post-July 1, 1979 offense was the "governing" sentence, then the Department applied the post-July 1, 1979 credit scheme to the entire composite sentence. We upheld the Department's administrative procedure finding that the legislature must have intended that the Department "employ some type of hybrid or 'composite' sentence to which the credits may be applied." *Id.* at 719.

Under the logic of *Price,* the "governing" sentence is the longest sentence for which Thiret was sentenced, and the relevant parole provisions of that sentence apply to the entire "composite" sentence.[11] Here, the 10–year sentence which Thiret received for attempted murder was the longer of the two sentences. Thus, the mandatory parole provisions of section 16–11–310, governing convictions for attempted murder, logically govern parole under this concurrent sentence. By its plain terms, section 17–2–201(5)(a)'s discretionary parole provisions apply only to the conviction for sexual assault on a child. We see no basis to conclude that a person who has been concurrently sentenced for a sex offense loses his right to mandatory parole on a longer, otherwise "governing" sentence. Because, as conceded by the Department, Thiret has accrued sufficient good time credits to require his discharge under the attempted first-degree murder charge, the Parole Board may not decline to discharge him because he was concurrently sentenced for a sex offense. That is not the procedure chosen by the legislature when it enacted the Gorsuch bill and neither the Department nor the Parole Board has discretion to override the legislative determination mandating parole. Thus, we reverse the judgment of the district court and remand this case to that court with directions that the writ of habeas corpus be granted.

---

**11.** Testimony presented at the habeas corpus hearing indicated that the Department automatically treats the "longest" sentence as the governing sentence. Pursuant to that procedure, the Department initially determined that Thiret was subject to mandatory release on February 23, 1989. The Department changed that computation procedure at the direction of the Parole Board in January, 1989.