**PUBLISH**

**UNITED STATES COURT OF APPEALS**

Filed 8/13/96

**TENTH CIRCUIT**

ANTHONY LEE CUNNINGHAM,

     Petitioner-Appellant,

v.

    No. 95-1166

WARREN T. DIESSLIN, Warden,
Buena Vista Correctional Facility,
Colorado Department of Corrections,

     Respondent-Appellee.

Appeal from the United States District Court
for the District of Colorado
(D.C. No. 93-Z-894)

Kathleen A. Lord, Deputy State Public Defender (David F. Vela, Colorado State Public Defender, with her on the brief), Denver, Colorado, for Petitioner-Appellant.

Robert M. Petrusak, Senior Assistant Attorney General (Gale A. Norton, Attorney General, with him on the brief), Denver, Colorado, for Respondent-Appellee.

Before **SEYMOUR,** Chief Judge, **KELLY,** and **MURPHY,** Circuit Judges.

_____

**MURPHY**, Circuit Judge.

_____

Anthony Lee Cunningham appeals from the district court's denial of his petition for a writ of habeas corpus. In 1982, Cunningham pleaded guilty in Colorado state court to first-degree sexual assault. He now argues that his plea was neither knowingly nor intelligently entered because he did not understand the length of incarceration to which he could be subjected. Cunningham mistakenly believed that he would serve only half of his sentence. He seeks specific performance of the plea bargain as understood by the parties or, in the alternative, to withdraw his plea. For the reasons given below, this court affirms the judgment of the district court.

## I. BACKGROUND

Cunningham was originally charged in the District Court, City and County of Denver, Colorado, with first-degree sexual assault and three other counts. He pleaded guilty to the sexual assault charge, a class-2 felony, on September 13, 1982. Colo. Rev. Stat. § 18-3-402(3). The State subsequently dismissed the remaining counts. At the time of his guilty plea, first-degree sexual assault

carried a possible sentence of twelve to twenty four years incarceration. *Id.* § 18-1-105(1)(a)(I), (9)(e). The trial court[1] sentenced Cunningham to seventeen years.

Consistent with the plea agreement, however, the trial court stayed Cunningham's sentence. Instead of incarceration under the Department of Corrections, the plea agreement provided that Cunningham, who was eighteen at the time of his plea, would enter a treatment program at the Closed Adolescent Treatment Center under the supervision of the Department of Youth Services. If Cunningham violated any of the rules of the treatment center, however, the trial court would lift the stay of his sentence and he would serve the balance of his sentence under the supervision of the Department of Corrections.

As a result of Cunningham's subsequent violation of the rules of the Closed Adolescent Treatment Center, the trial court terminated his treatment on July 6, 1984. In accordance with the terms of the plea agreement, the trial court permanently lifted the stay of Cunningham's seventeen-year prison sentence and ordered him transferred to the Department of Corrections.

At the time Cunningham committed his offense, Colorado generally sentenced persons under a determinate sentencing scheme. *See Thiret v. Kautzky*,

---

[1]The Colorado state court heard both Cunningham's plea in 1982 and his subsequent habeas petition in 1989. For ease of reference, we will refer to the state court as the "trial court" in connection with Cunningham's plea and sentencing. We will refer to the state court as the "habeas court" in relation to Cunningham's habeas proceedings.

792 P.2d 801, 804 (Colo. 1990) (en banc). This scheme removed substantially all discretion from the sentencing courts and the Colorado State Parole Board (the "Parole Board"). *Id.* at 803-04. Persons sentenced under the determinate scheme received mandatory parole after reaching the parole date, determined by deducting vested good time and earned time credits from the sentence.[2] *Id.* at 805. Thus, under the determinate scheme, the Parole Board could not extend the parole date beyond that established by the formula. From the time of the legislature's enactment of determinate sentencing in 1979 until January 1989, the Parole Board interpreted the requirement of mandatory parole to apply to all inmates serving sentences for crimes committed between July 1, 1979, and July 1, 1985, with limited exceptions.[3] *Thiret*, 792 P.2d at 806.

---

[2]Under § 17-22.5-301(1) of the Colorado Revised Statutes, a person serving a sentence for a crime committed between July 1, 1979, and July 1, 1985, could earn a good time deduction equal to one day of credit against a sentence for each day served. *Price v. Mills*, 728 P.2d 715, 718 (Colo. 1986) (en banc). The same inmate could receive additional earned time deductions under § 17-22.5-302(1). The Colorado Supreme Court has construed the interplay between § 17-22.5-301(1) and § 17-22.5-302(1) to provide for a deduction of approximately one-half of the sentence received, assuming the inmate earned the maximum allowances. *People v. Alexander*, 797 P.2d 1250, 1254 & n.6 (Colo. 1990) (en banc) (giving the example that an inmate sentenced to 50 years who received the maximum deductions would be released after serving approximately 23 years). Cunningham based his understanding that he would serve only one-half of his sentence on this calculation.

[3]In 1988, the Colorado legislature amended the parole provisions of its criminal code to authorize increased discretion to the Parole Board to grant or deny parole. *See Thiret v. Kautzky*, 792 P.2d 801, 805 (Colo. 1990).

One exception to mandatory parole, in the Parole Board's pre-1989 view, was for persons sentenced pursuant to the indeterminate scheme of the Sex Offenders Act, §§ 16-13-201 to -216 of the Colorado Revised Statutes. *Thiret*, 792 P.2d at 803; *Aue v. Diesslin*, 798 P.2d 436, 438 n.2 (Colo. 1990) (en banc). Persons sentenced under this indeterminate scheme were not subject to mandatory parole but were reviewed yearly by the Parole Board. *Id.* Cunningham was not sentenced for first-degree sexual assault under the Sex Offenders Act, but was given a determinate sentence under § 18-3-105(1)(a)(I), (9)(e) of the Colorado Revised Statutes.

The Parole Board changed its interpretation of the exception to the mandatory parole provision in January 1989. Under this new interpretation, all individuals sentenced for any sex offense, as the Sex Offenders Act defines "sex offense,"[4] but not limited to those who were sentenced pursuant to that Act, were not subject to mandatory parole. *Thiret*, 792 P.2d at 803. The Parole Board thus

_____

[4]The Sex Offenders Act reads:

> "Sex offense" means sexual assault, except misdemeanor sexual assault in the third degree, as set forth in part 4 of article 3 of title 18, C.R.S.; sexual assault on a child, as defined in section 18-3-405, C.R.S.; aggravated incest, as defined in section 18-6-302, C.R.S.; and an attempt to commit any of the offenses mentioned in this subsection (5).

Colo. Rev. Stat. § 16-13-202(5).

had discretion to grant or deny parole to all persons convicted of a defined sex offense even if they had received a determinate sentence. *Id.* The Colorado Supreme Court has since upheld the Parole Board's new interpretation of the extent of its discretion and the consequent retroactive increase in incarceration time. *Id.* at 806-07; *see also Aue*, 798 P.2d at 441 (upholding the *Thiret* decision against a due process challenge on the ground that the new interpretation was foreseeable).

Soon after the Parole Board changed its interpretation of its authority under § 17-2-201(5)(a), Cunningham learned that mandatory parole would not apply to him. On August 2, 1989, he filed a motion in Colorado state court to vacate his plea. Cunningham argued he did not voluntarily and knowingly enter his guilty plea because he did not understand the consequences. In particular, Cunningham alleged he was advised by counsel that if he were sentenced to prison, his sentence would be subject to mandatory parole. Cunningham claimed to understand this to mean that he would be released from prison after serving only one-half of his sentence. He alleged that he was not advised that he would fall into an exception to mandatory parole because his conviction was for a sex offense.

The habeas court subsequently held a hearing and denied Cunningham's motion to vacate his plea. At this hearing, the parties stipulated to certain

pertinent facts: (1) Cunningham's initial counsel advised his clients that they would only have to serve one-half of their sentences less earned time; (2) the district attorney who negotiated the plea also believed that the maximum time of incarceration would be one-half the sentence imposed; and (3) this half-time provision was not part of the plea offer. In addition, Cunningham's attorney at the time of his guilty plea stated on the record and without objection that he understood mandatory parole to apply and that he advised Cunningham he would serve half his sentence if the stay were lifted.

Cunningham also testified at the hearing in the habeas court. He stated he was advised by counsel and understood that the maximum amount of time he could be incarcerated under the plea agreement was one-half the maximum penalty of twenty four years. He explained that this understanding was the only reason he pleaded guilty. Cunningham also testified that if he had known he would have to serve his entire sentence, he would not have pleaded guilty.

The habeas court denied Cunningham's requested relief and ruled that his plea was voluntarily and intelligently made. The habeas court pointed to the many advisements by the trial court on the record to Cunningham that he could receive a twenty four-year sentence. Prior to taking his plea, the trial court specifically told Cunningham of the possible twenty four-year sentence at least five times. The trial court also warned Cunningham, prior to taking his plea, that

it was considering a sentence of about sixteen years and that if he violated the rules of the treatment center, "[Y]ou are going to do 16 years at the penitentiary." In addition, the trial court asked Cunningham whether he understood the possible sentence that could be imposed as a result of his plea; Cunningham responded, "Yes."

Prior to taking Cunningham's plea, the following colloquy took place:

> THE COURT: . . . Now, have there been any other promises made to you other than what I have just talked about here to get you to enter this plea?
>
> THE DEFENDANT: No.
>
> THE COURT: Has anybody at all told you that I would give you a certain sentence or treat you in a certain way other than what's been said here?
>
> THE DEFENDANT: No.

Despite this colloquy, the habeas court found that Cunningham was told by his attorneys that he would only have to serve one-half of his sentence plus one year of parole. Moreover, the habeas court acknowledged that it shared the understanding of the parties at the time of the plea as to the application of mandatory parole to Cunningham's sentence.

Nevertheless, the habeas court also found that Cunningham did not rely on the advice that he would be released after serving half his sentence. It further found that he made his plea solely with the consideration that he would enter the

-8-

treatment program and avoid supervision by the Department of Corrections. The habeas court based this finding on statements made during the plea colloquy. Prior to the plea, the trial court asked Cunningham the reason for the plea hearing and Cunningham responded, "I don't know, so that I can go to the [Closed Adolescent Treatment Center]." Then the trial court explained to Cunningham the nature and elements of the crime to which he was pleading guilty and the right to trial he was foregoing in order to ensure that Cunningham understood the effect of his guilty plea. Cunningham responded that he understood the explanations given to him by the trial court. On these bases, the habeas court held that Cunningham's guilty plea was voluntarily and knowingly made.

The Colorado Court of Appeals affirmed the trial court's ruling in an unpublished order. Relying on the reasoning of *Aue*, 798 P.2d at 441, which held that the change from mandatory to discretionary parole was foreseeable, the Court of Appeals held that this change did not itself eviscerate the guilty plea. *People v. Cunningham*, No. 90CA2065, slip op. at 3-4 (Colo. Ct. App. July 2, 1992). The court held that even if Cunningham were improperly advised by counsel or the trial court, this had no effect on the voluntariness of his plea. *Id.* at 4. The Colorado Supreme Court denied Cunningham's petition for certiorari in an unpublished order.

After having exhausted his state remedies, Cunningham filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 in the United States District Court for the District of Colorado. The magistrate judge held a hearing and heard argument but appears not to have heard additional testimony from witnesses. The magistrate reviewed the records created in the trial and habeas courts and issued a Recommendation to deny the petition. Cunningham then timely filed objections to the magistrate judge's Recommendation. The district court reviewed the record before it but apparently did not receive additional evidence. It then adopted the magistrate judge's findings in the Recommendation and dismissed the petition. Cunningham timely appealed the district court's Order of Dismissal. We exercise jurisdiction pursuant to 28 U.S.C. § 2253.

In this appeal, Cunningham argues that the plea bargain was not fair because he was induced to plead guilty by his false understanding of the application of mandatory parole. Because he has served longer than what he understood to be the twelve-year maximum period of incarceration, he contends that fundamental fairness dictates specific performance of the sentencing term of the plea bargain, as understood by all the parties. As a result, he claims he should be released from the custody of the Colorado Department of Corrections. In the alternative, Cunningham argues that his guilty plea and conviction should be vacated. We address these claims seriatim.

## II. SPECIFIC PERFORMANCE OF THE PLEA AGREEMENT

Whether government conduct has violated a plea agreement presents a question of law which we review *de novo*. *United States v. Robertson*, 45 F.3d 1423, 1442 (10th Cir.), *cert. denied*, — U.S. —, 116 S. Ct. 133 (1995), *and cert. denied sub nom. Graves v. United States*, — U.S. —, 115 S. Ct. 2258 (1995) *and Torres v. United States*, — U.S. —, 115 S. Ct. 2259 (1995).

"Where the government obtains a guilty plea predicated in any significant degree on a promise or agreement with the prosecuting attorney, such promise must be fulfilled to maintain the integrity of the plea." *United States v. Hand*, 913 F.2d 854, 856 (10th Cir. 1990). Interpreting the terms of a plea bargain involves a two-step process. The court must first examine the nature of the prosecutor's promise. *United States v. Pogue*, 865 F.2d 226, 227 (10th Cir. 1989). Next, the court examines this promise based upon the defendant's reasonable understanding upon entry of the guilty plea. *See Robertson*, 45 F.3d at 1442. Cunningham has the burden of proving the underlying facts establishing the breach by a preponderance of the evidence. *Allen v. Hadden*, 57 F.3d 1529, 1534 (10th Cir. 1995), *cert. denied*, — U.S. —, 116 S. Ct. 544 (1996).

Cunningham maintains that he is entitled to specific performance of the terms of the plea bargain as understood by the parties. Cunningham refers, of course, to the application of mandatory parole to his sentence. In *Lustgarden v.*

*Gunter*, 996 F.2d 552 (10th Cir.), *cert. denied*, 506 U.S. 1008 (1992), which also involved the issue of the Colorado State Parole Board's discretion to deny parole to sex offenders, we dealt with a related argument. The plea agreement itself did not state that mandatory parole would apply. This court then rejected the claim that promissory estoppel required the Parole Board to grant the petitioner parole because neither the statutory language nor the sentencing court promised mandatory parole. *Lustgarden*, 966 F.2d at 555; *see also Mahn v. Gunter*, 978 F.2d 599, 602 (10th Cir. 1992) (rejecting petitioner's reliance argument because there was no evidence of a promise of mandatory parole by the sentencing court). The court reasoned that even if the petitioner's attorney had promised him mandatory parole, this promise did not bind the court. *Lustgarden*, 966 F.2d at 554.

Cunningham nevertheless argues that the understanding of the parties at the time of the plea should control the construction of the terms of the plea bargain. His claim fails because the application of mandatory parole to Cunningham's sentence is neither an explicit nor an implicit part of the plea agreement. The undisputed fact is that mandatory parole was not a part of the plea offer;

Cunningham does not now allege to the contrary.[5] Thus his argument does not concern the construction of the plea agreement.

Because there was no promise that was impliedly part of the understanding of the plea agreement and the plea agreement does not specify that mandatory parole would apply, the cases cited by Cunningham are inapposite. *See, e.g.*, *Santobello v. New York*, 404 U.S. 257, 258-59, 262 (1971) (undisputed promise by the first prosecutor not to make a recommendation regarding sentence was violated by the second prosecutor); *Allen*, 57 F.3d at 1531-32 (understanding of the plea agreement expressed on the record by counsel and the court that dismissed counts would not be used to calculate the defendant's eligibility for parole was violated when used by the parole board); *Lucero v. Kerby*, 7 F.3d 1520, 1521-22 (10th Cir. 1993) (concerning the understanding of the term of incarceration contained in the plea agreement); *United States v. Shorteeth*, 887 F.2d 253, 254-55 (10th Cir. 1989) (involving the understanding of the term of the plea agreement that the Government would institute no prosecutions against the

_____

[5]Although the parties do not dispute that both the prosecutor and the trial court understood mandatory parole to apply to Cunningham's sentence at the time of his plea, Cunningham never alleges that either told him it would apply. In fact, one of the undisputed facts is the testimony of the prosecutor that mandatory parole was not part of the plea offer. The trial court never indicated on the record that Cunningham would only have to serve one-half of the sentence imposed. Indeed, in explaining the possibility of a sixteen-year sentence, the trial court told him he was "going to do 16 years at the penitentiary," not half of that. The court repeatedly told Cunningham of the possibility of a twenty four-year sentence.

defendant based on cooperation testimony); *accord Pogue*, 865 F.2d at 227;

*United States v. Thomas*, 580 F.2d 1036, 1037-38 (10th Cir. 1978) (promise made

on the record by the court to the first codefendant, and acquiesced in by the

prosecutor, not to sentence until all charges had been brought was understood by

the second codefendant to apply to her as well), *cert. denied*, 439 U.S. 1130

(1979); *People v. Fisher*, 657 P.2d 922, 924-25 (Colo. 1983) (en banc) (promise

by the detective that videotaped testimony of the defendant would not be used by

the prosecutor in any criminal proceeding against him).

The understanding Cunningham argues should control concerns the length

of the sentence he received, which is not part of the plea agreement. That all of

the parties may have understood mandatory parole to apply at the time of the plea

does not make this a part of the plea agreement. Cunningham can point to no

promise of mandatory parole that existed outside of the formal, written

agreement; nor can he show that the parties intended mandatory parole to be a

part of the plea agreement. As this court held in *Lustgarden*, any statement by the

petitioner's attorney about the application of mandatory parole does not bind the

court unless it is a part of the plea agreement. 966 F.2d at 555. Moreover,

*Lustgarden* held the Parole Board's prior misapplication of the Colorado statute

defining its discretion does not constitute a promise which binds the court. *Id.*

### III. CONSTITUTIONALITY OF THE GUILTY PLEA

Cunningham also argues that he did not knowingly and voluntarily enter his guilty plea because he was led to believe that mandatory parole would be a part of the agreement. He asserts that the reason he accepted the plea was to take advantage of mandatory parole, which his counsel informed him would apply. Cunningham argues that because the agreement did not actually conform to his understanding and contain this term, he should be able to withdraw his plea.

Whether a defendant entered a knowing and voluntary guilty plea presents a question of law which this court reviews *de novo*. *Marshall v. Lonberger*, 459 U.S. 422, 431 (1983); *Martin v. Kaiser*, 907 F.2d 931, 933 (10th Cir. 1990); *Laycock v. New Mexico*, 880 F.2d 1184, 1186 (10th Cir. 1988). To the extent that the question of whether the defendant knowingly and voluntarily made the plea depends on findings of fact made by the state court on habeas review, these findings, with specified exceptions, carry a presumption of correctness. 28 U.S.C. § 2254(d); *Marshall*, 459 U.S. at 431-32; *Jones v. Cowley*, 28 F.3d 1067, 1069 (10th Cir. 1994).

On review, a federal court may set aside a state court guilty plea only for failure to satisfy due process. *Miles v. Dorsey*, 61 F.3d 1459, 1465 (10th Cir. 1995), *cert. denied*, — U.S. —, 116 S. Ct. 743 (1996). In order to comport with due process guarantees, a defendant must have voluntarily and intelligently

entered a guilty plea. *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). The plea must be knowing and the product of a deliberate, intelligent choice. *Parke v. Raley*, 506 U.S. 20, 28 (1992); *United States v. Wright*, 43 F.3d 491, 495 (10th Cir. 1994). Furthermore, the defendant must have "a full understanding of what the plea connotes and of its consequences." *Boykin*, 395 U.S. at 244; *see also Miles*, 61 F.3d at 1466. We will uphold a state court guilty plea if the circumstances demonstrate that the defendant understood the nature and consequences of the charges and the defendant voluntarily chose to plead guilty. *Brady v. United States*, 397 U.S. 742 *passim* (1970); *Boykin*, 395 U.S. at 242-44; *Miles*, 61 F.3d at 1466.

Cunningham's argument centers on his understanding of the parole terms resulting from his plea. He does not contend that his plea resulted from any form of coercion, material misrepresentation by the prosecutor or the trial court, or an unfulfilled promise. *See, e.g.*, *Laycock*, 880 F.3d at 1186 (discussing factors contributing to involuntary pleas). Instead, Cunningham argues his lawyers advised him that he would serve only one-half of his sentence, that he relied on and believed this misunderstanding, and that both the prosecutor and the trial court shared this same misunderstanding. These contentions bear on whether Cunningham knowingly entered his plea and this court will focus on the state of his understanding at the time of his plea as reflected in the record.

-16-

An attorney's erroneous sentence estimate or prediction of parole does not render a plea unknowingly made. *Laycock*, 880 F.2d at 1186; *Self v. Blackburn*, 751 F.2d 789, 793 (5th Cir. 1985). A defendant's subjective understanding that he will serve less than one-half of his sentence, if it is not based upon any promise made by the defense attorney, the prosecutor, or the court, will not undermine the constitutionality of the plea or raise a question of whether the state breached its end of a plea bargain. *Laycock*, 880 F.2d at 1186; *Bonvillain v. Blackburn*, 780 F.2d 1248, 1252 (5th Cir.), *cert. denied*, 476 U.S. 1143 (1986); *Hall v. Maggio*, 697 F.2d 641, 643 (5th Cir. 1983) (holding the defendant's understanding that a life sentence was really only ten and one-half years, which he based upon "common knowledge," was not a promise that could render the plea involuntarily entered).

Closer to the issue here, in *Lustgarden*, this court considered a due process challenge to the Colorado Parole Board's 1989 reinterpretation of the application of mandatory parole to sex offenders. 966 F.2d at 553. The petitioner in *Lustgarden* had pleaded guilty in Colorado state court to three counts of sexual assault on a child. *Lustgarden v. Gunter*, 779 F. Supp. 500, 501 (D. Colo. 1991), *aff'd*, 966 F.2d 552 (10th Cir.), *cert. denied*, 506 U.S. 1008 (1992). When he learned that mandatory parole would not apply to him, he filed a petition for a writ of habeas corpus alleging he was entitled to mandatory parole. *Id.* at 501-02.

Following the result reached by the Colorado Supreme Court in *Aue*, 798 P.2d at 441, this court held the 1989 reinterpretation of the parole statute by the Parole Board was a foreseeable change which did not violate due process guarantees. *Lustgarden*, 966 F.2d at 554. The issue raised by Cunningham, however, which focuses on his knowledge of the length of confinement he faced, is not squarely settled by either *Laycock* or *Lustgarden*.

*Laycock* establishes that a defendant's understanding he will serve less than his full sentence does not alone render his guilty plea constitutionally infirm. 880 F.2d at 1186. The defendant's belief must be based upon some other additional factor, such as coercion or material misrepresentation by the prosecutor. Moreover, this understanding, from whatever its source, must have affected the defendant's decision with respect to the plea. That Cunningham's attorneys advised him mandatory parole would apply to his sentence is not in dispute. The habeas court, however, found that Cunningham did not rely on that advice when he accepted the plea.

Cunningham urges this court to hold that two findings by the habeas court are not supported by the record: (1) he did not rely on his counsel's statements that he would serve only one-half of his sentence; and (2) that he entered his plea solely to avoid incarceration under the Department of Corrections. Under *Laycock*, Cunningham's claim cannot stand unless his misunderstanding about the

length of his possible incarceration resulted from some promise made by his counsel, the prosecutor, or the trial court or some other impermissible action. *See Laycock*, 880 F.2d at 1186. As a result, the first of the challenged findings is crucial.

Federal review of a state court's factual findings is of limited scope. *Ball v. Ricketts*, 779 F.2d 578, 579-80 (10th Cir. 1985), *cert. denied sub nom. Riveland v. Ball*, 479 U.S. 870 (1986). A federal court must accept as true the state court's determination of underlying questions of historical fact and the inferences drawn therefrom based upon testimony taken in that court unless one of the exceptions under 28 U.S.C. § 2254(d) applies. *Sumner v. Mata*, 449 U.S. 539, 547-50 (1981); *Ball*, 779 F.2d at 580; *see also Thompson v. Keohane*, No. 94-6615, slip op at 10-12 (U.S. Nov. 29, 1995) (holding that § 2254(d) applies to basic, primary, or historical facts but that the "in custody" determination is a legal question outside the scope of § 2254(d)). At issue here is 28 U.S.C. § 2254(d)(8), which provides that the state court's findings are entitled to a presumption of correctness unless they are not fairly supported by the record.[6]

---

[6]Cunningham more strenuously challenges the factual findings of the federal district court and magistrate judge. It appears that these findings were made on the basis of the state record and that neither the district court nor the magistrate took additional testimony from witnesses. This court has held that findings by a district court and magistrate based merely upon their review of the state record are not fully entitled to the clearly erroneous standard of review. *Archuleta v. Kerby*, 864 F.2d 709, 711 n.2 (10th Cir. 1989); *Castleberry v. Alford*,

Having closely reviewed the entire record, we conclude it supports the habeas court's finding that Cunningham did not rely on the advice of his counsel concerning his length of confinement. Although the parties do not dispute that Cunningham's attorneys informed him mandatory parole would apply to his sentence, Cunningham stated in open court during his plea colloquy that he was not relying on any promises or predictions of a possible sentence made to him prior to his plea. "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Given this evidence, and the absence of any of the factors present in *Blackledge* which question the truth of the petitioner's declarations, the record supports the finding of the habeas court.

Furthermore, the habeas court's finding that Cunningham pleaded guilty solely to enter the program at the treatment center in turn additionally supports the conclusion that he pleaded without reliance on the promise of mandatory parole. That finding corresponds precisely with Cunningham's statement to the

---

666 F.2d 1338, 1342 n.2 (10th Cir. 1981). These findings are subject to this court's independent review of the record on these points. *Archuleta*, 864 F.2d at 711 n.2. Although the district court and magistrate judge made additional findings beyond those of the habeas court, their findings included the reiteration of the two habeas court findings listed above. Cunningham's claim will fail if these two findings are fairly supported by the record and are not shown by convincing evidence to be erroneous,. As a consequence, we focus on these findings by the habeas court, which are entitled to the degree of deference accorded 28 U.S.C. § 2254(d).

trial court during the plea colloquy. Moreover, Cunningham's argument that he accepted the plea agreement because of the application of mandatory parole is dubious. It does not really address the finding that he accepted the plea solely to enter the treatment program. The application of mandatory parole would have caused Cunningham's plea to provide no benefit to him over going to trial. In this context, the habeas court's finding that the promise of the treatment program motivated Cunningham to accept the plea explains his motivation because the treatment program did represent a benefit of the plea bargain.

Because the record supports the habeas court's findings, we cannot conclude that Cunningham relied on his attorney's statements at the time of the plea that he would receive mandatory parole. *Laycock* indicates the defendant's guilty plea may be constitutionally suspect when the defendant's attorney promised he would serve less than his actual sentence. *Laycock*, 880 F.2d at 1186-87. The record here, however, supports the finding that Cunningham did not act on the basis of that advice and did not rely on his counsel's statements when he made his plea. We therefore cannot conclude that Cunningham's guilty plea is constitutionally infirm. We hold that Cunningham entered his guilty plea knowingly and intelligently and that it cannot now be vacated on those grounds.

# IV. CONCLUSION

Because the undisputed facts demonstrate that mandatory parole was not a part of the plea offer, Cunningham's argument that the plea agreement should be construed to contain that term is unavailing. Cunningham's specific performance argument thus fails. Moreover, the habeas court found that the trial court never told Cunningham that he would serve only one-half of his sentence. It further found that Cunningham did not rely on any statements made to him by his counsel at the time of his plea that he would only serve one-half of his sentence. After a careful review of the record, this court is left with the conviction that these findings are supported by the record. As a result, we cannot conclude that Cunningham's attorneys misinformed him of any material consequences of his plea which caused him to accept the plea. Accordingly, this court holds that Cunningham entered his plea knowingly and intelligently. For these reasons, the district court's dismissal of Cunningham's petition for a writ of habeas corpus is AFFIRMED.