Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's
homepage at http://www.courts.state.co.us.  Opinions are also
posted on the Colorado Bar Association's homepage at
http://www.cobar.org.

ADVANCE SHEET HEADNOTE
January 13, 2020

**2020 CO 1**

**No. 19SA44,** *Graham v. Executive Director of Colorado Department of Corrections*—**Habeas Corpus**—**Parole Revocation**—**Statutory Interpretation.**

In this habeas corpus appeal, the supreme court considers whether subsection (11)(b) of the parole revocation statute, section 17-2-103, C.R.S. (2019), as it existed between August 9, 2017, and August 7, 2018, authorizes a parolee's confinement for the remainder of his parole period.  The court concludes that it does not.  Rather, under subsection (11)(b), the parole board is only authorized to order a parolee confined for up to ninety days.  Because the parolee in this case has been confined well beyond the ninety days authorized, the court holds that the district court erred in denying his habeas petition.  Therefore, the court reverses the district court's order and remands the case to the district court with directions to grant the writ of habeas corpus, make the writ permanent, and order that the parolee be immediately released to parole.

## The Supreme Court of the State of Colorado
2 East 14th Avenue • Denver, Colorado 80203

---

## 2020 CO 1

---

### Supreme Court Case No. 19SA44
*Appeal from the District Court*
Logan County District Court Case No. 18CV32
Honorable Charles M. Hobbs, Judge

---

### Plaintiff-Appellant:

Jimmie Graham,

v.

### Defendants-Appellees:

Executive Director of Colorado Department of Corrections; and Warden of
Sterling Correctional Facility.

---

### Judgment Reversed
*en banc*
January 13, 2020

---

Jimmie Graham, pro se
    *Sterling, Colorado*

**Attorneys for Defendants-Appellees:**
Philip J. Weiser, Attorney General
Chris W. Alber, Senior Assistant Attorney General
    *Denver, Colorado*

**PER CURIAM.**

¶1     In this habeas corpus appeal, we consider the parole board's order confining Jimmie Graham for more than ninety days as a result of his parole violations. We conclude that the parole board exceeded its statutory authority and that the district court subsequently erred in denying Graham's habeas petition. We thus reverse the district court's order. Because Graham has been confined well beyond the ninety days authorized by the version of the parole revocation statute in effect at the time of Graham's parole revocation, we remand to the district court with directions to grant the writ of habeas corpus, make the writ permanent, and order the Executive Director of the Colorado Department of Corrections and the Warden of Sterling Correctional Facility (collectively, "DOC") to immediately release Graham to parole.

## I. Facts and Procedural History

¶2     In February 2018, Graham's parole officer filed a complaint alleging that Graham had violated three conditions of his parole: changing his residence without permission; failing to report to the parole office as directed; and committing a new felony—escape. The allegation related to the commission of a new felony was dismissed after the escape case was dismissed. Graham then pled not guilty to the two remaining allegations. Following a hearing, the parole board found that Graham had violated his parole as alleged in the two outstanding counts of the complaint. In June 2018, the board revoked Graham's parole and

2

ordered him confined to the DOC for the remainder of his parole period. In so doing, the board noted that Graham had been on parole nine times, had absconded from parole seven times, and had been revoked from parole eight times. This poor parole history, concluded the board, justified its decision. Graham appealed, but his appeal was denied.

¶3     Graham then filed a petition for habeas corpus in the district court, alleging that the applicable version of the parole revocation statute, section 17-2-103(11)(b), C.R.S. (2017), did not permit the parole board to order him confined for the remainder of his parole period.[1] According to Graham, his case fell within the ambit of subparagraph (III.5), which authorizes confinement for a maximum of ninety days following revocation of parole. § 17-2-103(11)(b)(III.5). The district court denied Graham's petition and concluded that the parole board had acted within its discretion.

---

[1] The revocation of Graham's parole proceeded under section 17-2-103(11)(b), as it existed between August 9, 2017, and August 7, 2018. *See* Ch. 394, sec. 2, § 17-2-103, 2017 Colo. Sess. Laws 2026, 2027–29. Because that is the version of the parole revocation statute that governs Graham's appeal, it is the one we cite to and discuss throughout this opinion. We note that section 17-2-103(11)(b) has changed significantly; subparagraph (II) has been substantially amended, and subparagraph (III.5) has been repealed entirely.

¶4 Graham timely appealed to this court. *See* Colo. Const. art. VI, § 2 (outlining the appellate jurisdiction of the supreme court); *see also* § 13-4-102(1)(e), C.R.S. (2019) (excluding habeas corpus appeals from the jurisdiction of the court of appeals). We now reverse.

## II. Analysis

¶5 We agree with Graham that the parole board exceeded its statutory authority in ordering him confined for the remainder of his parole period. *See Martin v. People*, 27 P.3d 846, 858 (Colo. 2001) (noting that under section 17-2-103(11)(b), the parole board is authorized to return a parolee to confinement as a penalty for violating parole but that the period of confinement is limited by statute). Subsection (11) of section 17-2-103 sets out the board's authority to address parole violations. Paragraph (a) provides that when the board finds a violation, it may revoke parole (as provided in paragraph (b)), continue parole, or modify parole. § 17-2-103(11)(a). When, as here, the board decides to revoke parole, paragraph (b) restricts the duration of confinement it may order:

> (I) If the board determines that the parolee has violated parole through commission of a crime, the board may revoke parole and order the parolee confined for up to the remainder of the parole period.

> (II) If the board determines that the parolee violated any condition of parole that does not involve the commission of a crime, and the provisions of subsection (11)(b)(III) or (11)(b)(III.5) of this section are not applicable, the board may revoke parole and order the parolee confined for up to the remainder of the parole period.

4

(III) If the board determines that the parolee has violated any condition of parole that does not involve the commission of a crime, the parolee has no active felony warrant, felony detainer, or pending felony criminal charge, and the parolee was on parole for an offense that was a level 3 or level 4 drug felony or class 4, class 5, or class 6 nonviolent felony as defined in section 17-22.5-405(5)(b), except for menacing as defined in section 18-3-206, or any unlawful sexual behavior contained in section 16-22-102(9), or unless the parolee was subject to statutes related to wrongs to at-risk adults, or domestic violence sentencing, the board may revoke parole and order the parolee confined for a period not to exceed thirty days.

(III.5) If the board determines that the parolee has violated any condition of parole that does not involve the commission of a crime, the parolee has no active felony warrant, felony detainer, or pending felony criminal charge, and the parolee was on parole for an offense that was a level 2 drug felony or a class 3 nonviolent felony as defined in section 17-22.5-405(5)(b), except for stalking as described in section 18-9-111(4), as it existed prior to August 11, 2010, or section 18-3-602, or any unlawful sexual behavior described in section 16-22-102(9), or unless the parolee was subject to statutes related to wrongs to at-risk adults, or domestic violence sentencing, the board may revoke parole and order the parolee confined for up to ninety days.

. . .

(VI) If the board determines that a parolee who has been designated as a sexually violent predator has violated any condition of parole, the board may revoke parole and order the parolee confined for up to the remainder of the parole period.

§ 17-2-103(11)(b).

¶6 In his habeas petition, Graham argued that he qualified for the ninety-day maximum in subparagraph (III.5) because: (1) he did not violate parole by committing a new offense; (2) the offense for which he was on parole, a class 3

5

felony escape, was a "nonviolent felony offense"; and (3) he otherwise met the subparagraph's requirements.

¶7    The DOC did not dispute Graham's contention. Instead, it claimed that Graham had failed to recharge his GPS monitoring device. The DOC thus relied on section 17-2-103(11)(f)(II). Under that provision, if the board determines that a parolee has violated the conditions of his parole by removing or tampering with an electronic monitoring device, it may revoke the parolee's parole pursuant to paragraph (b) of subsection (11).

¶8    The record is not clear as to whether the parole board determined that Graham had in fact removed or tampered with his electronic monitoring device. But this is not an impediment to our resolution of Graham's appeal because the DOC's subsection (11)(f)(II) contention is immaterial. Although that subsection authorizes the parole board to revoke a parolee's parole for removing or tampering with an electronic monitoring device, it does not set forth a *different penalty* for such conduct; instead, it simply refers to *all* the penalty options listed in the subparagraphs contained in subsection (11)(b). Therefore, even if Graham removed or tampered with his electronic monitoring device, his habeas petition still hinged on whether his case fell within the purview of subparagraph (III.5). Because it is uncontested that his case did, meaning that the parole board had no

6

authority to confine him for more than ninety days, the parole board exceeded its statutory authority by ordering him confined for the rest of his parole period.

¶9 That Graham may have had a particularly poor record on parole should have been of no consequence to the board's decision. The DOC cited no authority to the district court, and we are aware of none, that permitted the parole board to revoke Graham's parole and order him confined for the remainder of his parole period simply because he had a poor record on parole. The parole board certainly lacked authority to override the legislative determinations in section 17-2-103(11)(b). *See Thiret v. Kautzky*, 792 P.2d 801, 808 (Colo. 1990) (reversing the district court's denial of a habeas corpus petition noting that neither the DOC nor the parole board "has discretion to override the legislative determination mandating parole" and remanding the case with directions that the writ be granted). As we observed in *Stilley v. Tinsley*, 385 P.2d 677 (Colo. 1963), while a parole violator's "record may be unsavory and his conduct not such as to appeal favorably to the conscience of the court," he is nevertheless "entitled to be dealt with in conformity with constitutional and statutory guarantees." *Id.* at 680. Graham's parole record, as poor as it is, cannot deprive him of his constitutional and statutory rights.

### III. Conclusion

¶10    We reverse the district court's order denying Graham's habeas petition. Because Graham has been confined well beyond the ninety days authorized by the applicable version of the parole revocation statute, we remand to the district court with directions to grant the writ of habeas corpus, make the writ permanent, and order the DOC to immediately release Graham to parole.